**James E. PRUITT and Louise Pruitt, Respondents,**

v.

**COMMUNITY TIRE COMPANY, Missouri Company and David Pierson, Appellants.**

**No. WD 34900.**

Missouri Court of Appeals, Western District.

July 31, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Oct. 2, 1984.

William H. Sanders, Penni L. Johnson, Kansas City, for appellants.

Robert Hines, Richard C. Thomas, Columbia, for respondents.

Before LOWENSTEIN, P.J., and MANFORD and BERREY, JJ.

LOWENSTEIN, Presiding Judge.

The defendants Community Tire Company ("Community") and David Pierson appeal a jury verdict of $500,000 awarded to plaintiff James Pruitt for personal injuries. The point of error presented here by the defendants involves whether the plaintiff's verdict directing instruction contained an essential element. The plaintiff counters by stating this point has not been preserved for appellate review. Community, a Missouri corporation engaged in the business of manufacturing, storing, selling and distributing tires and tire supplies, employed Pierson as one of its drivers. One of Pierson's regular delivery stops included McKnight Tire Company, the plaintiff's employer (who was not a party to this action). Pruitt, the plaintiff, was severely injured on McKnight's premises while helping Pierson unload large commercial tires from one of Community's trucks.

The facts consistent with the verdict and considered in a light most favorable to the plaintiff are as follows. Pruitt had worked for McKnight Tire Company in Columbia, Missouri as a tire serviceman for nine to ten months before the accident in question on July 6, 1979. His duties involved mounting and dismounting heavy equipment tires and on Fridays, regularly helping Pierson unload a shipment of tires off Community's ten-wheel tandem truck. On the day in question, Pierson drove Community's truck onto the north side of McKnight Tire Company, where Pierson, Pruitt, and other McKnight workers first unloaded passenger tires and tubes.

After finishing that task, Pierson next drove the truck to a different location on the McKnight premises where the large, heavy, commercial equipment tires were customarily unloaded. Only Pruitt helped him with this work. The unloading of these larger tires involved the use of the truck's hydraulic boom. The truck's stake bed spanned ten feet in width and twenty feet in length, with rails running the length of both sides. Between the bed and the cab of the truck, in the middle of the cab, stood the hydraulic boom fastened to the truck's frame. The controls to operate the boom were also located between the truck's bed and cab on either side of the truck. The arm of the boom was estimated as eight feet long having an eight foot extension, with a large canvas strap hooked to its end. The strap would loop inside the tires while being lifted.

The process for unloading the large commercial tires remained basically the same during each of Pierson's deliveries at McKnight. Pierson would operate the boom from the driver's side of the truck. Pruitt, standing on the truck's bed, would hook onto the boom's strap whatever tires were to be unloaded from the truck. Before Pierson would activate the boom, move the boom, or swing tires, he would say something like, "Watch it," and Pruitt would move towards the back of the truck bed to avoid being hit by the suspended tires. Pierson would then elevate the boom and stretch it out over the side of the truck, and then unhook the tires from the boom. When the boom would move with the large tires strapped onto it, the entire truckbed would shake. The truck would still shake or vibrate even when outriggers were extended.

On the Friday afternoon in question, Pruitt strapped two tires after which Pierson operated the boom to lift them off the truck and onto the ground. Pruitt's employer, Ward McKnight, momentarily called Pruitt in to talk to him. During Pruitt's absence from the truck, Pierson placed one of the tires that had just been set down on the ground back onto the truck. This particular tire stood approxi-

mately seventeen inches wide, five feet tall and weighed 500 pounds. The tire was allowed to barely lean against the right front side of the truck, with its bottom tread barely touching the side.

Pruitt returned, noticed the tire standing up in the truck and asked Pierson about it. Pierson told him that the tire was supposed to go to Jefferson City. Pruitt then strapped two more tires, weighing approximately 750 pounds each, and Pierson operated the boom to pick them up, swing them up and to the side of the truck with the boom stretched out. Pruitt went to the back of the truck to avoid being hit by the tires. Pierson walked away from the controls to the outstretched boom where the tires lay to unhook the strap and free the tires. In the meantime, Pruitt, facing away from Pierson, and about seven feet from the tire destined for Jefferson City, picked up a tire rim on the truck's bed and threw it over the side of the truck. As he picked up and was throwing a second rim, that particular tire fell and hit Pierson in the back of his legs. Pierson described in his testimony what had happened to cause the truck to jar and move the tire:

Q. What happened in between time? What did Mr. Pruitt do, if anything?

A. He had come back over to the truck and was operating the boom.

Q. Did you get any notice that he was going to operate the boom?

A. No, sir.

Q. Did he say anything, that he was going to operate the boom?

A. No, sir.

Q. What was he doing in operating the boom? What did you see he was doing?

A. Well, he was going to pull his strap out from his tires.

Q. (By Mr. Hines) Tell the jury exactly what he was doing. What was he doing in operating the boom?

A. He was raising his boom up.

Q. What did that do?

A. That pulled on the strap from underneath the tires and when the strap caught underneath the tires, it jarred the truck up.

Pruitt testified further that Pierson would usually say, "Watch it" before operating the boom. Ward McKnight also stated it was customary as a matter of safety procedure to give warnings before engaging the boom when more than one person was working. Had Pruitt received such a warning, he stated he would have stood in the back of the truck away from the 500 pound tire standing near the front side of the truck (away from the boom) because the truck would shake whenever the boom moved.

Pierson's account of the accident was as follows. After both he and Pruitt replaced the tire destined for Jefferson City back onto the truck, and Pruitt set the tire on the side of the truck, the two proceeded to unload additional tires. Pruitt hooked the strap onto the tire, proceeded to get out of the way, while Pierson maneuvered the boom, lifting it up and swinging it around to the side. As Pierson followed the boom with his eyes and with his back to the truck, he heard a noise. He heard "a raising of the truck," turned around, and saw that the tire replaced onto the truck had fallen on Pruitt. The factual dispute over the placement of the tire in the truck is not relevant to this appeal and was really taken out of the case at the trial level when the plaintiff testified to seeing the tire in the truck and asking about it.

The plaintiff submitted his case on Count II of his second amended petition with the following verdict director (Instruction No. 7):

Your verdict must be for plaintiff James E. Pruitt and against defendants if you believe:

First, there was tire on a truck bed standing against a rail of the truck bed, and

Second, defendant David Pierson knew or by using ordinary care could have known that a tire in that position was likely to fall if the truck's boom was operated while loaded with tires because

such operation would cause the truck to vibrate, and

Third, defendant David Pierson failed to use ordinary care to warn plaintiff James E. Pruitt that defendant David Pierson was about to operate the truck's boom while it was loaded with tires, and

Fourth, as a direct result of such failure, plaintiff James E. Pruitt was injured,

unless you believe plaintiff James E. Pruitt is not entitled to recover by reason of instruction number 8.

Instruction 8 submitted the defense of the plaintiff's contributory negligence as follows:

Your verdict must be for defendants if you believe:

First, plaintiff James E. Pruitt assisted defendant David Pierson in setting the tire down on the truck bed in an unstable position from which he knew or in the exercise of ordinary care should have known that the tire was likely to fall, and

Second, plaintiff James E. Pruitt, was thereby negligent, and,

Third, such negligence of plaintiff James E. Pruitt directly caused or directly contributed to cause any damage plaintiff James E. Pruitt may have sustained.

As their sole point of appeal, the defendants claim that plaintiff's verdict director failed to include an essential and disputed element of plaintiff's right to recover, *i.e.* that plaintiff did not know that defendant David Pierson was operating or about to operate the truck's boom while the truck was loaded with tires.

The crux of the appellant's argument is that instruction 7 was defective in that an essential element of plaintiff's case, the absence of knowledge by plaintiff that the boom was going to be operated, was not included. They state in a case like this, a failure to warn is an essential element, "a condition precedent" to recovery, and must be a part of the plaintiff's verdict director and cannot be required to be taken up by the defendants in their instructions on an affirmative defense.

Prior to submission the defendants made a general objection to this instruction. Their motion for new trial filed three days before the end of the 15 day period (March 25, 1983) contained the following claim of error on Instruction 7:

for the reason that the competent, credible evidence proved as a matter of law that plaintiff knew that defendant David Pierson was about to operate the truck's boom and no warning was thus necessary or required and would have told plaintiff nothing that he did not already know and the operation of the boom under such circumstances and the failure to warn thereof was not negligence and could not properly be submitted to the jury as the basis for returning a verdict for plaintiff. Said instruction is further erroneous in that it assigns as negligence on the part of defendants acts which were performed by plaintiff or performed by plaintiff and defendant Pierson jointly.

This language imparts an allegations relevant to this point that there was evidence the plaintiff *knew* the boom was going to be operated and therefore no *warning* was necessary.

On May 2, 1983 the defendants filed a "Memorandum in support of Defendant's Post-Trial Motions" in which the specific question of the alleged missing element in Instruction 7 was raised. The memorandum attacked Instruction 7 upon two bases. The first repeated the argument contained in the motion for new trial that the evidence did not support the plaintiff's entitlement to a warning. They argued, "plaintiff was not entitled to a warning that defendant Pierson 'was about to operate the truck's boom' because plaintiff was fully aware of that fact and a warning would tell him nothing he did not already know and did not contribute to his accident. The giving of a 'warning' instruction under these circumstances is, therefore, not supported by the evidence and constitutes reversible error." The second basis represents the point of error urged upon appeal. The memorandum continues, *"Further-*

*more,* Instruction 7 fails to require a finding that plaintiff did not know of the operation of the truck's boom and is *also* erroneous for this reason," and supports its argument with authority from Missouri decisions. (Emphasis added.)

Whether the defendants have preserved their point on appeal (the missing element in Instruction 7) is pivotal.[1] The following apply: Rule 70.03 provides, "specific objections to instructions shall be required in motions for new trial unless made at trial;" Rule 78.07 states allegations of error must be presented to the trial court in the motion for new trial, and general allegations are all right if based upon specific objections, otherwise specific allegations are required in the motion; Rule 78.04 allows 15 days after entry of judgment on a verdict for the new trial motion—this time under Rule 44.-01(b) may not be enlarged; Rule 84.13 provides no allegations of error are to be considered on appeal except such as have been presented to or expressly decided by the trial court.

■ Appellants' argument that the specific objection raised in their after-trial motion did encompass their claim on appeal is not well taken, especially in light of examining the evidence. The plaintiff's own testimony raises an issue of whether a warning would not be required as a matter of law under the circumstance where the plaintiff saw Pierson's operation of controls shortly before being injured. Arguing that the element of the plaintiff's knowledge of Pierson's operation of the controls should have but was not submitted to the jury poses a distinct and separate legal theory. To successfully argue on the latter basis, as recognized in the appellants' brief, a dispute in the evidence must exist concerning Pruitt's knowledge and, under the particular facts involved here, the plaintiff's lack of knowledge must be an essential element of the existence of the duty to warn rather than an affirmative defense. *See Cline v. Carthage Crushed Limestone Co.,* 504 S.W.2d 102, 111 (Mo. 1973). On the other hand, to successfully

argue on the former basis, the defendant must show that as a matter of law reasonable minds could not differ concerning the plaintiff's knowledge. The two grounds represent mutually exclusive and separate legal theories affording the defendants the same relief. The language of the appellants' memorandum supporting their motion recognizes the separate nature of the two grounds.

■ Appellants correctly point out that the purpose of Rule 78.07 is to give the trial judge the opportunity to correct trial errors without the delay, expense and hardship of an appeal. *Skelton v. General Candy Co.,* 539 S.W.2d 605, 610 (Mo.App. 1976). The rules, however, will be strictly enforced to effectuate their intended purpose. *Hereford Concrete Products, Inc. v. Aerobic Services, Inc.,* 565 S.W.2d 176, 177 (Mo.App.1978); *Fallert Tool & Engineering Co. v. McClain,* 579 S.W.2d 751, 757 (Mo.App.1979); *Belter v. Crouch Brothers, Inc.,* 554 S.W.2d 562, 563 (Mo.App.1977).

■ That the memorandum did contain the specific point on appeal does not mean that the timeliness requirement of Rule 78.04 may be circumvented. None of the cases cited by the appellants imply that a memorandum filed after fifteen days of the verdict may raise new grounds of error and remain preserved for appellate review. In *Skelton v. General Candy Co.,* the memorandum of law referred to in footnote three was "submitted with" the motion for new trial, thus raising no issue of the timeliness of any new grounds raised by the memorandum that did not appear in the after-trial motion. 539 S.W.2d at 610. Because the specific ground raised on appeal did not appear in the motion for new trial, nor was it otherwise *timely* brought to the attention of the trial court, any error is not preserved for appellate review. *Ferguson v. Overhead Door Co. of Springfield,* 549 S.W.2d 356, 362 (Mo.App.1977).

What is presented now is a general objection prior to submission and a specific objection in the motion to the question of lack

---

1. Counsel on appeal did not represent the defendants at trial.

of evidence to support the instruction in question. A new and different allegation was presented in the "memorandum" and in this court. Since no specific objection was made at trial the motion for new trial was required to have the specific objection to the instruction. *Salamy v. State Farm Fire and Casualty Company*, 629 S.W.2d 653, 654 (Mo.App.1982). That was not done—the complaint raised here in the appellants' brief is different from and not included in the timely motion made to the trial court and is not preserved. *Travelers Indemnity Company v. Henderson*, 618 S.W.2d 728, 729, 730 (Mo.App.1981). The argument of appellants that the memorandum contains what the motion implies does not comply with the Rules. *Bowman v. Burlington Northern, Inc.*, 645 S.W.2d 9, 11–12 (Mo.App.1982). In addition the "memorandum" really amounts to an attempt to file an amended new trial motion after the 15 day limitation has passed. As such the grounds stated therein are not preserved. *Lloyd v. Garren*, 366 S.W.2d 341, 344 (Mo.1963). This additional point in an untimely motion was a nullity. *State v. Berry*, 609 S.W.2d 948, 951 (Mo. banc 1980).

■ The appellants' alternate request for plain error relief under Rule 84.13(c) is denied. A review of the transcript and the briefs shows no manifest injustice or miscarriage of justice has occurred. *Citizens Bank of Dexter v. Hall Trailer Sales, Inc.*, 550 S.W.2d 233, 234 (Mo.App.1977). The appellants' liability in this case was premised upon the failure to warn that the boom was in use, when its operation was known to cause a vibration which could reasonably be expected to cause the upright tire to fall. The trial court will not be convicted of plain error when the defendants' evidence and theory as expressed in their contributory negligence instruction number 8 was concerned with a pre-occupation with how the tire got there and made no mention of their failure of any duty to warn. The plaintiff's evidence supported his claim of lack of knowledge of the boom's operation. This is not a situation of hatred, passion or prejudice having been engen-

dered and will not come under the protective umbrella of plain error in a civil case. *Davis v. Mathews*, 649 S.W.2d 256, 258 (Mo.App.1983).

The judgment is affirmed.

All concur.