**In re Quinn Cole REEDER.**

**Nos. WD 52506, WD 52612.**

Missouri Court of Appeals,
Western District.

April 22, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 27, 1997.

Karl Heinz Timmerman, Grandview, for
respondent/appellant.

Theodore M. Kranitz, St. Joseph, for appellant/respondent Chauvin.

Kimberly Loving, St. Joseph, as Guardian
Ad Litem for respondent infant.

SPINDEN, Judge.

Cozette Chauvin appeals the circuit court's
denial of her motion to transfer custody of
her son from his father, Kenneth Reeder, to
her. The circuit court placed the child in his
father's legal custody on January 21, 1994,
primarily because of a psychiatrist's diagnosis that Chauvin suffered a mental illness
which would keep her from providing for her
son and which caused her to be too protective
of him. The psychiatrist has since retracted
that diagnosis.

Chauvin petitioned the court for a change
of custody on May 9, 1995. She claimed
changed circumstances relating to Reeder's
failure to adhere to the circuit court's custody order concerning visitation, alcohol use,
and sexual behavior. After a bench trial in
January 1996, the circuit court determined
that although Chauvin presented evidence of
some changed circumstances it was not material enough to warrant a change of custody.
Furthermore, the circuit court concluded that
Chauvin's propensity to overly-protect her
son was "extremely detrimental" to his emotional development; therefore, the boy's best
interest mandated that he remain in Reeder's
custody.

The boy was born out of wedlock on May
20, 1990. Reeder and Chauvin lived together

briefly after their son's birth. Chauvin wanted to marry Reeder, but Reeder was not interested in marriage. He continued having relationships with other women.

On June 2, 1992, Reeder filed a petition for declaration of paternity and for temporary custody and visitation. On November 9, 1992, Reeder's parents filed a motion to intervene. A three-day bench trial began on October 26, 1993, and on January 21, 1994, the circuit court issued its order granting Reeder legal custody but giving the couple joint physical custody until September 1, 1995. After that date, when the boy was to begin school, Reeder would have primary physical custody and Chauvin would receive visitation every other weekend and four weeks in the summer. The circuit court's order made it apparent that it chose to place the child in Reeder's care as the lesser of two evils. It noted that both had "questionable moral values" and had exercised "poor judgment." The primary motivation for the circuit court's giving Reeder custody was the mother's apparent mental difficulties with "a schizotypal personality which . . . interfere[s] with [her] ability to interact with others and to meet her potential in society." The circuit court issued specific orders to Reeder and Chauvin concerning their drinking alcoholic beverages, their social life, their travel out of town with the boy, and the need to keep each other informed of the boy's activities.

Fifteen months after that order—four months before the change in which Reeder was to obtain primary custody and Chauvin would see her son much less often—Chauvin asked the circuit court to modify custody. She rested her contention on allegations that Reeder had violated the court's order by drinking alcoholic beverages in his son's presence, by allowing the boy to "hang out" at a bar, and by having overnight female companionship while the boy was present. She also complained that Reeder did not cooperate with visitation and was not flexible in granting additional visitation and that Reeder had taken his son out of town for more than 72 hours without notifying her of his whereabouts, that he had prevented her from participating in school functions, that he had disregarded medical appointments she

had scheduled for the child, and that he had paid child support only when forced to do so by garnishment.

The hearing on the motion spanned a week as 26 witnesses testified. Their testimony filled 1005 pages of transcript. Both parties and the child's grandparents had resorted to recording nearly all their telephone conversations, keeping written diaries, and using a video camera to document their contacts with one another. Each exhibited animosity and mistrust of the other.

The circuit court made extensive findings of fact and conclusions of law. It included a description of Reeder's and Chauvin's "strengths and weaknesses."

In reciting Chauvin's shortcomings, the circuit court decided that although a psychiatrist had declared that his diagnosis that Chauvin suffered a schizotypal personality was wrong, Chauvin's behavior still was "extremely detrimental" to her son's emotional development. The circuit court found that she was too protective, that she permitted him to manipulate her, and that she showed him affection in a way which caused him to cling to her.

As for Reeder's faults, the circuit court described the guardian *ad litem*'s observations of them as perceptive. The guardian *ad litem* found that it was "clear" there were changed circumstances, and observed, "Mr. Reeder has absolutely horrible morals. I am utterly convinced that he sat up there on that stand in front of this Court and lied repeatedly. I'm utterly convinced that he is a person without significant morals."

In evaluating the boy's best interests, the guardian *ad litem* noted that Chauvin "had some difficulty maintaining schedule and routine" with the child and that the boy was "insistent and demanding and whining, and where [Chauvin] is unable or perhaps unwilling . . . to redirect him and establish some boundaries for appropriate behavior." He further noted that, "[A]s much as it sticks in my craw and I don't like it, because of Mr. Reeder's poor moral values, it seems to me as though the best interests of the child does require that his primary physical custody remain with Mr. Reeder."

The circuit court concluded, "[I]f this Court's role was simply to weigh the personal virtues of the two parties and disregard the overall interest of the child, [Chauvin] would win hands down." The circuit court, however, decided that the child's best interests required that he be placed in Reeder's custody because "[d]espite [Reeder's] shortcomings as a parent, ... [Chauvin's] behavior is extremely detrimental to the normal emotional development of the child."

The Supreme Court has mandated that in reviewing this decision we must affirm it unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

This is a particularly strict standard which courts must apply with great care; particularly where the welfare and custody of children is at issue. In such cases, appellate courts should not exercise the power to set aside a ... judgment on the ground that it is against the weight of the evidence unless it is firmly convinced that the welfare of the child requires other disposition.

*In re Marriage of M.P.*, 793 S.W.2d 510, 511 (Mo.App.1990). We are firmly convinced in this case that the circuit court's judgment is against the weight of the evidence and that the welfare of Reeder's and Chauvin's child requires a reversal of the circuit court's judgment.

Chauvin established sufficient changed circumstances to satisfy the requirements of § 452.410.1, RSMo 1994, which mandates that a change of custody must be based upon a change of circumstances in the child or his custodian and that modification is necessary in the child's best interests. The circuit court noted that Reeder had not complied with its order regarding alcohol use and immoral behavior and had used "extremely poor judgment" in intentionally ramming his car into Chauvin's car in a fit of anger. It further noted that Reeder "still does not understand why it is not good for the child to be sitting on a bar stool for lengthy periods of time subjected to the influence of adults drinking alcoholic beverages and engaging in adult barroom conversation." The circuit court, however, decided that the boy's best interest mandated that he remain in Reeder's custody because the record "clearly establish[ed]" that Chauvin's behavior was "extremely detrimental" to the boy's emotional development and that this outweighed Reeder's indiscretions.

In detailing the behavior which disqualified Chauvin from serving as custodian of her son, the circuit court said:

Instead of making the child feel comfortable in going to [Reeder's] home or the home of his parents, [Chauvin] excessively dwells on how much she misses him in conversations with the child. She repeatedly and unnecessarily checks on the child in unannounced and unscheduled visits to the home of [Reeder] or his parents. She is overprotective of the child, shows her affection in an inappropriate manner so as to cause the child to cling to her, and she allows the child to manipulate her rather than being able to control the child's behavior. Regardless of whether this behavior is a manifestation of the diagnosis given by Dr. [Ekkehard] Othmer in his deposition at the first trial, a manifestation of his revised diagnosis at this trial, or is not related to either, such behavior is extremely detrimental to the normal emotional development of the child.

The record, however, simply does not support the circuit court's conclusion that Chauvin's behavior was extremely detrimental to her son's emotional development. Even if it did, we are puzzled by the circuit court's deciding that Chauvin's over-protection was more detrimental than Reeder's under-protection, especially given his resistance to the circuit court's mandates and his deliberate decision to put his social affairs above his son's interests.

All of the professionals who participated in the hearing and who expressed an opinion on the matter—two counselors and a psychiatrist—testified that they believed that Chauvin was able to care for her son. None expressed concern that Chauvin's behavior was extremely detrimental to her son's emotional development. They noted Chauvin's difficulty with allowing her son to manipulate

her, but none characterized these difficulties as so detrimental to the boy's emotional development as to disqualify Chauvin as an able mother. The record provided a sound basis for concluding that she was dedicated to helping her son to learn appropriate behavior. The record also established that she was teachable and was anxious to learn the parenting skills the circuit court and the guardian *ad litem* deemed her to lack.

The circuit court was particularly concerned with the boy's suffering separation anxiety. The circuit court found that the record "clearly establish[ed] that [Chauvin] has been the cause of the child's separation anxiety[.]" We find nothing in the record supporting this finding. The circuit court noted that William Brown, a psychologist, had diagnosed a separation anxiety problem in Quinn. The circuit court, however, failed to note that Brown said that he could not be certain of the cause. Brown acknowledged that, while it could be related to one parent "doting too much attention" during separation periods, it could also be caused by fear of the other parent or the "general tension existing between the parents."

Chauvin's being the one who sought Brown's treatment for her son's separation anxiety seems significant to us. Surely, this should work in Chauvin's favor by showing that she was a perceptive mother who endeavored to find help for her son's problems. On the other hand, when Reeder obtained legal custody, Brown's treatment suddenly stopped. Reeder wrote Brown a letter informing him of Reeder's designation as the boy's legal guardian and stating that he had to approve all medical treatment for the boy. The record indicates that Reeder did not resume counseling for the boy with any other professional for separation anxiety.

The guardian *ad litem* suggested to the court that the court's fears concerning Chauvin's "emotional stability" should have been resolved by the evidence presented at the hearing:

Dr. [Ekkehard] Othmer[, a psychiatrist,] was here and his diagnosis was somewhat

changed.[1] That didn't mean a great deal to me one way or another. Something that did mean a great deal to me was that I think over the last two years she's done relatively well. She's been able to continue with her school work. She's been able to continue with her employment. And so I think some of the Court's questions [concerning her emotional stability] have been answered.

Chauvin sought help for Quinn through counseling for his separation anxiety. She also sought to improve her parenting skills by voluntarily participating in a parenting education program.

We are left with a firm belief that the circuit court did not have an adequate basis for finding that Chauvin's overly-protective mothering was "extremely detrimental" to her son's emotional development. We find nothing in the record which disqualifies her as a suitable custodial parent, nor are we convinced that additional parenting skills couldn't be addressed through education.

We also have a firm belief that in comparison to the danger which Chauvin's behavior posed, Reeder's behavior represented a far graver threat to his son's development. Extended hours in a barroom setting, multiple short-term relationships and sexual affairs, extended out-of-state journeys with the boy accompanied by an unmarried paramour, and the half-truths Reeder admitted to telling the court establish the environment which Reeder created for his son. This court's Eastern District has commented:

A child's first impression of right and wrong comes from the family home. While "[c]ertain conduct once looked upon by society with opprobrium does not carry the social or private stigma it once did a few short years ago … private personal conduct by a parent which could have an effect on children during the years in which their character, morality, virtues, and values are being formed cannot be ignored or sanctioned by the courts …"

1. Actually, it was completely changed. Othmer testified that his original diagnosis that Chauvin suffered schizotypal personality had proven false.

L.F.H. [v. R.L.H., 543 S.W.2d 520, 523 (Mo.App.1976) ].

*In re the Marriage of M.P.*, 793 S.W.2d at 512. This court's Southern District has observed:

A good environment and a stable home is generally considered as the most important single consideration in custody cases....

[A]dverse consideration of past or present inappropriate conduct of a parent is not limited to conduct that has in fact detrimentally affected the children. Such conduct is of importance, perhaps decisive, "when it is reasonably predictable that the moral environment will adversely affect the child." *Ryan v. Ryan*, 652 S.W.2d 313, 315 (Mo.App.1983). Also see *In re Marriage of P.I.M.*, [665 S.W.2d 670 (Mo.App. 1984) ]. There must be considered what conduct a parent may inspire by example or what conduct of a child a parent may foster by condonation. Past and present conduct may be a reliable guide to the priorities of a parent.

*R—— v. R——*, 685 S.W.2d 598, 602 (Mo. App.1985).

The bad influence of Reeder's lifestyle on the boy's attitudes was manifestly clear in the telling remarks the boy made to others. Reeder himself acknowledged to the court that he expected his lifestyle to influence his son. Hence, we disagree with the circuit court's finding that the boy's best interests required that he be placed in Reeder's custody.

For these reasons, we reverse the circuit court's decision to leave the couple's child in Reeder's legal and physical custody. We remand for the circuit court to enter an appropriate order transferring legal and physical custody to Chauvin. It shall set such constraints as it deems appropriate, including the ordering of needed guidance and counseling. It shall set appropriate visitation and reset the amount of child support Reeder shall pay.[2]

In her next point, Chauvin complains that the circuit court erroneously ordered her to pay her share of guardian *ad litem* fees "within eight months of the date of ... judgment subject to punishment for contempt." Chauvin asks us to strike this language from the order because the trial court lacks jurisdiction to order the punishment of contempt to enforce future obligations or an order to pay money. We decline. The circuit court has not found anyone in contempt. The language merely gives warning to the parties and provides no order of the court upon which we may rule. A circuit court's declaration which requires further order upon the happening of a contingency is not appealable. *In re Marriage of Michalski*, 542 S.W.2d 96, 99 (Mo.App.1976).

■ In her final point, Chauvin argues that the circuit court erred in assessing a portion of the guardian *ad litem* fees against her. She contends that under § 210.842, RSMo 1994, the circuit court can assess the fees only as costs and that assessing her costs was a gross abuse of discretion in light of her limited financial ability to pay. We disagree.

Section 210.842 does not govern. Chauvin moved for modification of custody, and Chapter 452 governs in such cases. The circuit court appointed the guardian *ad litem* pursuant to § 452.423.4 which says:

The guardian ad litem shall be awarded a reasonable fee for such services to be set by the court. The court, in its discretion, may award such fees as a judgment to be paid by any party to the proceedings, or may tax such fees as costs to be paid by the party against whom costs are taxed, or from public funds. Such an award of guardian fees shall constitute a final judgment in favor of the guardian ad litem. Such final judgment shall be enforceable against the parties in accordance with chapter 513, RSMo.

---

2. Because of this ruling we need not address Chauvin's contentions of error concerning the circuit court's considering evidence of her attitude toward the court's original order, its failure to give her a hearing on its proposed findings of fact and conclusions of law, and its not correcting its order concerning visitation. It also eliminates the need to address Reeder's points on cross-appeal.

The statute gave the circuit court authority to issue a judgment for the guardian *ad litem*.

The circuit court found that both parties should be liable for the judgment of the guardian *ad litem* "since both parties' actions and lack of cooperation contributed to the necessity of a guardian ad litem." We do not discern an abuse of discretion.

Chauvin's point concerning her inability to pay is without merit. The circuit court assessed $5621.55 of the guardian *ad litem*'s fee to Reeder and $1873.85 to Chauvin. This apportionment was supported by substantial evidence. The point is denied.

▪ The guardian *ad litem* asked us to strike Chauvin's brief because it did not contain a "fair and concise statement of the facts relevant to the questions presented for determination without argument" as required by Rule 84.04(c). The guardian *ad litem* complains that Chauvin's statement of facts omits all evidence contrary to the argument advanced. The brief submitted by Chauvin's attorney utterly failed to present a fair and concise statement of facts. We also note that we found deficiencies in Reeder's brief. By this ruling, we do not condone such lack of compliance with Rule 84.04. Only because of the importance of settling issues of child custody as expeditiously as possible, and because we found merit in Chauvin's petition, we deny the motion of the guardian *ad litem*.

LOWENSTEIN, P.J., and HOWARD, J., concur.