**C.A.W., By Next Friend Rollie Welch, and Rollie Welch, individually, Petitioners–Respondents,**

v.

**Jamie WESTON, Respondent– Appellant.**

No. 23830.

Missouri Court of Appeals, Southern District, Division One.

Oct. 31, 2001.

Susan F. Butler, Joplin, for appellant.

W. Henry Johnson, Sims, Johnson, Wood & Farber, Neosho, for respondents.

KENNETH W. SHRUM, Presiding Judge.

In this paternity suit brought by Rollie Welch ("Father"), the trial court awarded him custody of the subject child, C.A.W. ("C.A.W."). Jamie Weston ("Mother") appealed. Her single point relied on alleges that the "change of circumstances" requirement of § 452.410, RSMo (2000), was implicated in the suit, but the trial court made no findings regarding any such changes, and Father never proved a change of circumstances.[1] With this as her premise, Mother asserts the trial court erred when it awarded custody of C.A.W. to Father. We affirm the judgment of the trial court.

### STANDARD OF REVIEW

The trial court's award of custody will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Edmison v. Clarke,* 988 S.W.2d 604, 607 (Mo.App.1999). "In reviewing the judg-

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

ment of the trial court in a paternity action, this court looks to the evidence that supports the judgment and disregards that which is unfavorable to the judgment." *Shadwick v. Byrd,* 867 S.W.2d 231, 235 (Mo.App.1993). Furthermore, the trial court is given broad discretion in child custody matters, and its decision will be upheld unless we are firmly convinced the welfare and best interests of the child requires otherwise. *Edmison,* 988 S.W.2d at 608.

## STATEMENT OF FACTS

After Father and Mother lived together for a period of time without being married, Mother gave birth to C.A.W. on May 20, 1997. They remained unwed, began to have problems with their relationship, and quit living together in December 1997. Upon separating, Father "packed up and left" taking C.A.W. with him. Apparently, Mother then sought and obtained custody of C.A.W. via a habeas corpus proceeding. Father was accorded a visitation privilege with C.A.W. on alternate weekends.

After the habeas corpus order was entered, Father filed this paternity suit in January of 1998. In addition to seeking a declaration that he was the father of C.A.W., Father sought custody of C.A.W. Between the filing of this suit and entry of judgment in July of 2000, numerous disputes and allegations arose between the parties. We need not detail all of these differences; suffice it to say evidence existed to support a finding that Mother changed residences on numerous occasions without informing Father, Mother unilaterally altered the visitation schedule, and

physical abuse was committed upon C.A.W. while in Mother's care.

The trial court found Father was the biological parent of C.A.W., and that it would be in the best interest of C.A.W. if Mother and Father were awarded joint legal custody. Father was awarded physical custody with Mother receiving visitation rights. Mother appeals from that part of the judgment that gave Father physical custody of C.A.W.

## DISCUSSION AND DECISION

Preliminarily, we consider Father's assertion that Mother has not followed appellate court briefing requirements mandated by Rule 84.04 and that her appeal should be dismissed for such violations.[2] Father's complaint about a non-complying brief is meritorious; the brief is wholly deficient. Without detailing the many deficiencies in Mother's brief, we note they clearly warrant dismissal of Mother's appeal. We choose, however, not to do so because issues of child custody exist. *See In re Reeder,* 946 S.W.2d 1, 6 (Mo.App. 1997); *Harbaugh v. Harbaugh,* 472 S.W.2d 449, 451 (Mo.App.1971).

Mother's sole point and argument on appeal maintains the trial court erred when it treated this paternity case as an initial custody proceeding and awarded Father custody of C.A.W. by using only the "best interests" analysis per § 452.375.2. She argues that a "prior custody decree" existed in this case via the habeas corpus order; consequently, she insists that Father, in this paternity suit, had to also prove a change of circumstances within the meaning of § 452.410 as a precursor to being awarded custody of C.A.W.[3] Based on this premise and her

---

**2.** All rule references are to Supreme Court Rules (2000), unless otherwise stated.

**3.** In pertinent part, § 452.410 (governing modification of custody decrees) provides:

"[T]he court shall not modify a *prior custody decree* unless it ... finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a

claim that Father never proved a change in circumstances, Mother insists the trial court erred in awarding Father physical custody of C.A.W.

■ We digress briefly and observe that to find merit in Mother's claim would require us to convict the trial judge of an error regarding an issue that was never brought to his attention. Although Father's pleading in the paternity case alleged that the best interests of C.A.W. would be served if he was given custody of her, it contained no "change of circumstances" allegations. Mother answered Father's paternity petition and generally denied his "best interest" allegations. She *did not,* however, challenge Father's petition request for custody by filing a motion to dismiss nor did she otherwise affirmatively defend on the basis that Father's petition, to the extent it sought custody, was fatally defective due to the absence of change of circumstances allegations. Mother *never* advised the trial judge, either during the course of the paternity trial or in her post-trial motion, of the claim she now makes on appeal, i.e., that the habeas corpus order was a "prior custody decree" within the meaning of § 452.410.

Mother's only post-trial complaint about the trial court's custody decision reads as follows: "The Court's award of custody, temporary custody and visitation is not in the best interests of the minor child. Further, the custody award is against the weight of the evidence, is not supported by sufficient evidence, constitutes an abuse of discretion, and misapplies the applicable law." Such general allegations, whether in

change has occurred in the circumstances of the child or his custodian and that modification is necessary to serve the best interests of the child." (Emphasis supplied.)

a post-trial motion or otherwise, preserve nothing for appeal, especially when, as here, Mother *never at any time* gave the trial court a clue of her claim that a "prior custody decree" existed within the meaning of § 452.410. *See, e.g. Walsh v. St. Louis Nat. Baseball Club,* 822 S.W.2d 559, 563 (Mo.App.1992); *Hartley v. Matejka,* 585 S.W.2d 240, 242 (Mo.App.1979). Since Mother never gave the trial judge a chance to address the question she now raises on appeal, her point is not preserved for our review. *State ex rel. Nixon v. American Tobacco Co., Inc.,* 34 S.W.3d 122, 129 (Mo. banc 2000); *Pruitt v. Community Tire Co.,* 678 S.W.2d 424, 429 (Mo.App.1984). Even so, we opt to examine Mother's point under the plain error standard of Rule 84.13(c) because it is a child custody case.[4]

■ In analyzing whether the earlier "habeas corpus order" in this case was a "prior custody decree" within the meaning of § 452.410 (as Mother contends), we keep in mind that § 452.410 never comes "into play, unless and until there has been an initial determination of custody pursuant to § 452.375." *State ex rel. Dept. of Soc. Serv. v. Maher,* 976 S.W.2d 75, 79 (Mo.App.1998). Accordingly, unless this record shows that the habeas corpus court made a "determination of custody pursuant to § 452.375[,]" that is, made a "best interests" analysis, Mother's argument must fail.

■ No part of the file in the habeas corpus case was placed in evidence in this paternity case, either as an exhibit or via judicial notice. The only evidence adduced about the habeas corpus proceeding was as follows:

4. Rule 84.13(c) provides: "Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

"Q. [To Father] ... [T]here was a writ of habeas corpus issued out of this court; is that correct?

"A. That is correct, sir.

"Q. And because there was no order that you were the biological father, then custody at that time was provided to the mother, is that true?

"A. That is correct.

"Q. And you were granted visitation rights at that time?

"A. I was granted alternate weekends."

. . . .

"Q. [TO MOTHER] [I]s that when you filed your writ of habeas corpus to get—

"A. Yes.

"Q. —[C.A.W.] back?

"A. Yes.

"Q. Did [Father] get visitation with [C.A.W.] after she was returned to you?

"A. Yes."

 This, however, is not evidence that compels a finding, as a matter of law, that the habeas corpus court did a § 452.375 "best interest" analysis and thus require that Father show a change of circumstances in his paternity suit. This follows because, although habeas corpus is a "conventional remedy" available to a natural parent to regain custody from a third person "where there has been no prior adjudication of custody in any legal forum[,]" *State ex rel. Busch by Whitson v.*

Busch, 776 S.W.2d 374, 375 (Mo.banc 1989), and although decisions about "custody, visitation and support are not only within the scope of habeas corpus proceedings where the petitioner is alleged to be unfit, but may be necessary for resolving the basic issue of how to best serve the interests of the child," *Id.* at 76, nothing in this record reveals what issues were present in the habeas corpus case. Depending upon what issues were raised in the habeas case, a custody order favorable to Mother could have been entered there without deciding Mother's fitness, C.A.W.'s welfare, or the "best interests" of C.A.W. This is so because at the time of the habeas corpus proceeding, there existed a "parental presumption" that custody of C.A.W. should be awarded to Mother.[5] The presumption existed because Father's paternity of C.A.W. had not been adjudged; consequently, his status was no more than that of any third-party having physical custody of C.A.W. without a lawful custody order. Thus, for Father to have prevailed in the habeas corpus case, he would *first* have had to prove that either (1) Mother was unfit, *Jones*, 10 S.W.3d at 535–36, or (2) show there existed special or extraordinary concerns about the welfare of the child which demanded that Father—not Mother—have custody. *Scarritt*, 76 Mo. at 582. Unless Father produced evidence to support one of those grounds, the habeas court would never have moved to the "best interest" analysis. *Jones*, 10 S.W.3d

**5.** Statutory recognition of the "parental presumption" in a "third-party" versus "natural parent" custody dispute is found in § 452.375.5(5)(a). *Jones v. Jones*, 10 S.W.3d 528, 534 (Mo.App.1999). "Separate and apart from this statutory authority for the presumption, the parental presumption has long been recognized in the case law." *Flathers v. Flathers*, 948 S.W.2d 463, 466 (Mo. App.1997). Historically, the "parental presumption" in habeas corpus was stated in this fashion:

"[I]t is the duty of the court to award the person of the infant to the custody of the [natural parent], unless it is made manifest to the court that the [parent], for some reason, is unfit or incompetent to take charge of it; or unless the welfare of the child itself, for some special or extraordinary reason, demands a different disposition of it, at the hands of the court."

*In re Scarritt*, 76 Mo. 565, 582 (Mo.1882).

at 535–36. As stated earlier, Mother's point fails without evidence that the habeas court made the "best interests" analysis.

The record before us does not provide an explicit answer about what happened in the habeas corpus case, i.e., whether the habeas court made the "best interests" analysis as Mother now implicitly claims. The record does show that during a pretrial colloquy between the judge and the litigants' lawyers, a question arose concerning the case file in the habeas suit. The judge then asked, "Let me take a look at it and be sure." Next, he addressed the lawyers, saying: "This has to do with a writ of habeas corpus issued in '97, and I think that matter has been resolved and is no longer pending before the Court. We are here to take up the issue regarding custody, visitation, child support, and attorney's fees." With that said, the paternity case proceeded to conclusion without the court taking judicial notice of the habeas file and without Mother asking the court to do so.

■ Although courts do not ordinarily notice judicially the record and facts in one action in deciding another and different one, *In Interest of C.M.W.*, 813 S.W.2d 331, 333 (Mo.App.1991), they can and should do so when justice requires. *Knorp v. Thompson*, 352 Mo. 44, 175 S.W.2d 889, 894 (1943). "And 'there may be cases so closely interwoven, or so clearly interdependent as to invoke' a rule of judicial notice in one suit of the proceedings in another suit." *Id.* (citations omitted). The trial judge here also tried the habeas corpus case; consequently, he was in a unique position to know if justice required him to take judicial notice of the habeas case. If justice required the trial judge to take judicial notice of the facts and records in the habeas case because the "best interests" analysis had already oc-

curred there, we presume, absent a showing to the contrary, the trial court would have done so. *See Jones v. Des Moines & Miss. River Levee Dist.*, 369 S.W.2d 865, 873 (Mo.App.1963). This follows because we presume the trial judge knew and applied the law correctly in rendering his judgment in the paternity case. *See Dycus v. Cross*, 869 S.W.2d 745, 751 (Mo.banc 1994); *Memco, Inc. v. Chronister*, 27 S.W.3d 871, 876 (Mo.App.2000).

■ The law in this state is that "[t]he party asserting the positive of a proposition bears the burden of proving that proposition." *Dycus*, 869 S.W.2d at 749. Although Mother never alleged in her answer or other pleading that there was a "prior custody decree" via the habeas corpus order, she tried to inject that issue by cross-examining Father about the habeas proceeding. Also, Mother testified that she received custody of C.A.W. via a habeas corpus proceeding. Having injected that issue into the paternity case, Mother had the burden of proving a prior custody decree within the meaning of § 452.410. Specifically, she had the burden of proving that the habeas court, as part of its decisional process, made a § 452.375 "best interests" analysis. However, Mother failed to meet that burden as she, for whatever reason, made no effort to put the record and facts from the habeas case into evidence. On this record, we cannot say that a manifest injustice or miscarriage of justice resulted when the trial court awarded custody of C.A.W. to Father without Father showing a change in circumstances. Point denied.

The judgment is affirmed.

MONTGOMERY, J., and BARNEY, C.J., concur.