619 So.2d 817 (1993)
STATE of Louisiana
v.
Billy Wayne STRANGE.
No. 92 KA 1053.
Court of Appeal of Louisiana, First Circuit.
May 28, 1993.
*818 John R. Walker, Asst. Dist. Atty., Houma, for plaintiff and appelleeState of La.
Anthony Champagne, Indigent Defenders, Houma, for defendant and appellant Billy W. Strange.
Before WATKINS, CRAIN and GONZALES, JJ.
CRAIN, Judge.
Billy Wayne Strange was indicted for first degree murder. Prior to trial, the state amended the charge to second degree murder, a violation of La.R.S. 14:30.1(A)(2). Defendant pled not guilty and, after trial by jury, was convicted as charged. The court sentenced defendant to serve a term of life imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence. Defendant has appealed, urging sixteen assignments of error. He specifically has abandoned assignments of error numbers 4, 9 and 10.
In the second, third, and fifth assignments of error, defendant argues the court erred when it placed a ten minute limitation on counsel's voir dire of each jury panel. In the second and third assignments, defendant claims the limitations placed on the first and second jury panels were error. In the fifth assignment, defendant additionally contends the court erred by halting the voir dire before defendant had completed questioning the third panel regarding defendant's right against self-incrimination and right to refuse to testify. Finding merit in these assignments, we reverse the conviction, pretermitting consideration of other issues argued by defendant on appeal.
At the conclusion of the court's questioning of the first panel, the court cautioned the attorneys not to repeat any of the questions already asked by the court. Later, the court clarified its ruling and said it would allow counsel to elaborate on a certain topic and go into more detail, but it would not allow the same question. The court also announced that it was limiting each side to only ten minutes to question each panel. When it was defendant's turn to question the jurors, counsel objected to the court's limitations. In connection with his objection to the time limitation, defense counsel indicated his intent to voir dire the jurors on the following topics: duties in present and past employment; educational background; religious tendencies; victim of crime and prior arrests; specific information about the offense, including the location of the offense and the juror's reaction to the victim having been shot in the face with a shotgun; presumption of innocence; defendant's right not to testify; state's burden of proof; standard of reasonable doubt; and the juror's understanding of a jury's duty during deliberations. After counsel summarized these topics, the court stated that it had already questioned the jurors in most of the areas and that *819 counsel had "ample time" to question the jurors further. After the selection of jurors from the first panel, defendant asked that his objection to the court's restrictions and time limitation be made a continuing objection.
For each of the three panels, the court's examination included instruction and questioning on the following topics: purpose of voir dire; basic qualifications of jurors; background information about each juror (name, address, age, occupation, marital status, spouse's name and occupation, children's ages, educational training, and home ownership); possible hardship resulting from jury service; familiarity with defendant, defendant's attorney, state's attorney, the victim, and witnesses; exposure to publicity; relationship with law enforcement officers and agencies; victim of any crimes; family members arrested for any crime; prior jury service; willingness to follow the law as instructed; presumption of innocence and burden of proof; defendant's right to remain silent; definition of reasonable doubt; and any reason why the juror could not serve in an impartial manner.[1] The state's questioning of the three panels varied. In addition to discussing some of the topics already mentioned by the court, the state covered the following areas: definition of second degree murder; effect any religious beliefs would have on the juror; whether or not the juror would place on the state a burden greater than beyond a reasonable doubt; harshness of the penalty; and the effect a plea bargain arrangement with one of the state's witnesses might have on the juror.
During the defense voir dire of each panel, counsel initially questioned individual jurors concerning affirmative responses given by the juror to questions asked by the court. For example, counsel attempted to establish the extent of a juror's relationship with a state's witness or with law enforcement agencies for those jurors who had responded affirmatively when questioned by the court on those topics. Defense counsel also questioned each panel concerning whether or not the fact the victim was shot in the face with a shotgun would have any effect on them and questioned the jurors concerning defendant's right not to testify. Defendant appeared to complete his questioning on these two topics for the first and second panels. However, he questioned less than half of the jurors on the third panel concerning defendant's right not to testify when the court interrupted him and announced the time was up.[2] At the conclusion of the voir dire, the court announced that defendant had been allowed thirteen minutes to question the first panel, twelve minutes on the second panel, and eleven minutes on the third panel. (Additionally, one juror on the third panel was questioned further outside the presence of the rest of the panel.)
An accused in a criminal case is constitutionally entitled to a full voir dire examination and to the exercise of peremptory challenges. La. Const. art. I, § 17. The court, the state, and the defendant have the right to examine prospective jurors; and the scope of the examination is within the discretion of the court. La. C.Cr.P. art. 786. The purpose of voir dire examination is to determine the qualifications of prospective jurors by testing their competency and impartiality and discovering bases for intelligent exercise of cause and peremptory challenges. State v. Williams, 457 So.2d 610, 613 (La.1984); State v. Jones, 596 So.2d 1360, 1366 (La. App. 1st Cir.), writ denied, 598 So.2d 373 (La.1992). Because of the difficulty of the concepts and values which must be understood and applied by each juror in the deliberations, counsel for each side is entitled to an opportunity to assess the personality and comprehension of each prospect as a unique human being before accepting him as a juror or challenging him for cause or peremptorily. State v. St. Amant, 413 So.2d 1312, 1319 (La.1981) (on rehearing); *820 Jones, 596 So.2d at 1366. Thus, counsel should be given "wide latitude" during voir dire, within reasonable limits, to explore the attitudes and experiences of the prospective jurors. State v. Hall, 616 So.2d 664 (La.1993). At the same time, the trial court is given much discretion to limit voir dire as long as the defendant is not deprived of a reasonable opportunity to intelligently exercise his challenges. State v. Lee, 559 So.2d 1310, 1316 (La.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991). However, in imposing limitations on voir dire examination, a trial court must act with great caution to avoid an abuse of its sound discretion to determine the scope of the examination. Jones, 596 So.2d at 1367. When the accused asserts that he has been deprived of his constitutional right to full voir dire examination, a reviewing court must examine the entire voir dire in order to determine whether or not there has been such a deprivation. State v. Duplessis, 457 So.2d 604, 606 (La.1984); Jones, 596 So.2d at 1367.
In Jones, 596 So.2d at 1367, we found it improper for a trial court arbitrarily to impose a time limitation on the defendant's voir dire examination. The defendant in Jones was charged with simple burglary of an automobile. The trial court limited voir dire by defense counsel to twenty minutes per panel, each panel consisting of sixteen prospective jurors. Although we warned that "[a] court imposing such an arbitrary limitation flirts with reversible error on grounds of deprivation of a defendant's constitutional right to full voir dire examination," 596 So.2d at 1367, we declined to reverse because the defendant failed to show he was prejudiced by imposition of the time limitation. In finding the error harmless, we noted that the trial court had undertaken an exhaustive explanation and inquiry to determine the prospective jurors' qualifications by testing their competency and impartiality. We also found that much of defense counsel's voir dire consisted of inquiries unnecessarily repetitious of those of the trial court. Significantly, the defendant in Jones used only slightly in excess of half of the allotted twenty minutes; and the record did not reveal any interruption by the court of defense counsel's voir dire. Accordingly, we concluded that the potential deprivation of the constitutional right to full voir dire examination inherent in time limitations had not materialized. Jones, 596 So.2d at 1367.[3]
In the instant case, the court erred by arbitrarily imposing a ten minute time limitation. After reviewing the entirety of the voir dire record, we also find defendant was prejudiced by the time limitation.
The court limited defendant to ten minutes for voir dire of panels of fourteen prospective jurors in this complex second degree murder case. (The state called twenty-nine witnesses.) Defendant consumed the entirety of his time and, although the court actually allowed a few minutes extra, defendant was not able to cover all the topics he intended, nor was he able on the third panel to question all of the prospects concerning defendant's right not to testify. While the court's questioning of each panel covered numerous topics, the type of questioning used by the court on the legal issues often was close-ended, calling for only a "yes" or "no" response. See Duplessis, 457 So.2d at 606 n. 3. When questioned further by defense counsel, some of the jurors responded differently than would be expected from their earlier responses. For example, in response to questions by the court, all of the jurors on the third panel (as a group) responded affirmatively when asked by the court if they could accept the law which requires the state to prove defendant's guilt and which does not require the defendant to testify. *821 Additionally, all of the jurors on the third panel (again as a group) responded negatively when asked by the court if they would have any problem with the presumption of innocence or defendant's decision not to testify. However, when questioned further by defense counsel as to whether or not the jurors believed defendant did something wrong simply because he was charged, Nicholas Rhodes indicated he needed to discuss his answer privately,[4] Philip Liner responded affirmatively, and Mary Jenkins said she believed defendant had "done something wrong or he wouldn't be here." When defense counsel then asked the jurors if they could follow the law which would not allow them to draw any conclusion from defendant's failure to testify, Janet Marcel implied she would want to know why defendant did not testify and Mary Randolph Jenkins said she felt defendant should "speak for himself." Defendant was able to question only five of the jurors on the third panel concerning this topic before the court stopped the voir dire.
Throughout the voir dire, the stress placed upon defense counsel by the time limitation was evident. For each panel, he warned the jurors he did not have much time. He even asked the jurors on the second panel to "jump up and say anything" if there was something about their background they thought defendant should know even if they were not questioned about it. As to each panel, the court warned counsel when he had two minutes left.
Under these circumstances, the court's arbitrary imposition of a ten minute time limitation on defendant's voir dire examination was error and prejudiced defendant in his ability to exercise his constitutional right to full voir dire examination. Accordingly, the assignment of error has merit; and we reverse the conviction and remand for further proceedings.
CONVICTION REVERSED. SENTENCE VACATED. REMANDED FOR NEW TRIAL.
NOTES
[1] The record does not reveal that the jurors were asked to complete a written jury questionnaire outside the courtroom which could have been used to establish the jurors' backgrounds in more detail.
[2] Ten of the fourteen prospective jurors on the third panel were used in the completion of the jury selection.
[3] On appeal, the state apparently acknowledges that our ruling in Jones prohibits the use of arbitrary time limitations. However, the state's main argument is that Jones should not apply because the Jones decision was rendered after the voir dire in the instant case. The state argues that the "abuse of discretion" standard preceding Jones should apply. This argument is meritless. Our decision in Jones was based upon well-settled jurisprudence interpreting the guarantee of the Louisiana Constitution to a full voir dire examination. In Jones, we found the trial court abused its discretion by imposing the arbitrary time limitation. However, we found no prejudice and declined to reverse.
[4] Although the court stated it would allow counsel to question Rhodes and another juror outside the presence of the rest of the panel, the court later decided to excuse Rhodes for cause without the necessity of further questioning.