**Larry POLLARD, surviving husband of Judy Pollard, deceased and James Kissner, surviving child of Judy Pollard, Appellants,**

v.

**Don R. WHITENER, M.D., Respondent.**

No. WD 52644.

Missouri Court of Appeals, Western District.

Feb. 10, 1998.

Motion for Transfer to Supreme Court Denied March 31, 1998.

Application for Transfer Denied May 26, 1998.

Lynn R. Johnson, Overland Park, KS., for Appellants.

Raymond C. Lewis, Jr., Columbia, for Respondent.

HANNA, Judge.

The decedent's husband, Larry Pollard, and her son, James Kissner, brought this action against defendants, Drs. Don R. Whitener and Curt Vogel, alleging that their negligent medical treatment caused Mrs. Judy Pollard's death. Mrs. Pollard underwent hernia repair surgery at Boone Hospital Center in Columbia under Dr. Vogel's care. Pulmonary complications caused Dr. Vogel to call in Dr. Whitener, a pulmonologist. Mrs. Pollard developed respiratory failure and died within a few days. Plaintiffs charged that the defendant's medical care fell below the standard required. Before submission, the plaintiffs dismissed their claim with prejudice against Dr. Vogel.

The jury returned a $70,000 verdict in favor of the plaintiffs. Judgment was entered accordingly, and the plaintiffs' post-judgment motion was overruled. On appeal, plaintiffs' single issue is whether the trial court abused its discretion by curtailing the length of the plaintiffs' voir dire examination.

The facts relating to the voir dire examination commence with the pre-trial conference, held three weeks before the trial date, when the trial court advised the attorneys, among other matters discussed, that jury information forms would be available the day before trial. During the discussion about the length of the trial, the judge told the parties that she expected to commence the evidence on the afternoon of the first day of trial. The court's written pre-trial order confirmed that "plaintiffs indicate that they will be ready to proceed with the presentation of evidence on the opening day of trial when the jury selection is completed."

On the morning of trial, the jury panel was sworn at approximately 9:30 A.M. The voir dire examination commenced with questioning by the trial court about the panel members' relationship with the parties, the lawyers and their associates, their knowledge of the facts of the case, hardships created by jury service, and other questions of a general nature. The court's examination continued for approximately one hour. Following a recess, when strikes for cause were made, the plaintiffs' attorney took over the examination which continued for a little over one

hour. The court recessed for lunch at 12:10 P.M., when the judge told the attorneys that she wanted voir dire to be finished "as close as possible" to 2:30 P.M. She remarked that there were "25 jurors left over from [another] case," which were returning at that time. She noted that defense counsel had not asked any questions and that the "plaintiffs' counsel has had about a little over an hour at this point." Plaintiffs' counsel replied: "I've got quite a bit more, your Honor." The court responded:

THE COURT: Well, you need to expedite it and move along so that we'll—I'm not sure that we have a jury out of this panel yet. And I mean they haven't—all the questions haven't been asked obviously. And I do not want people hanging around the courthouse waiting for voir dire. So, I would ask that you expedite the matter.

Counsel said he would go as rapidly as he could. When court reconvened after the noon recess, the following dialogue took place:

THE COURT: Just so that we will know, ground rules, Plaintiffs will conclude their voir dire in about a half an hour. And then Defense will each be given an opportunity to do the voir dire.

MR. JOHNSON [Plaintiffs' Attorney]: Your Honor, I wouldn't be able to finish my voir dire in half an hour.

THE COURT: Well, you will need to because we're going to conclude that and allow the Defendants to proceed at that time.

MR. JOHNSON: Your Honor, I would like to submit the questions that I would want to ask at some point that I'm not going to be allowed to ask because I think I am going to be deprived of a fair trial if I am not allowed to do complete and full voir dire for my client. So at some point, if you cut me off, I would like to have the opportunity to present to you all of the questions which I'm going to be able to ask so they can be in the record.

THE COURT: You can make a record.

Plaintiffs' counsel continued his questioning of the jury. He stopped questioning *sua sponte* and stated:

MR. JOHNSON: Your Honor, as you know, I do have other questions, but I'll just submit those to you later. I'm not really concluded, but I am concluding because of the time constraint.

The trial court then turned the voir dire questioning over to defense counsel who continued for approximately forty-five minutes. The trial court concluded voir dire with the question as to whether any prospective juror, after reflection, wished to modify or change any answer previously given. Two members of the venire responded.

The court recessed and the jury panel left the courtroom. The judge asked the plaintiffs if they had any challenges for cause. Plaintiffs' attorney answered:

MR. JOHNSON: Yes. Before we do that, I'd like to make our record, please.

THE COURT: You may mark whatever questions you have and I will show those as those are the questions you would have asked, had you been given more time.

MR. JOHNSON: What we would like to do would be to prepare a pleading and have those attached as an exhibit and provide it to the Court tomorrow.

THE COURT: You may do that. Are there challenges for cause then?

MR. JOHNSON: Yes, your Honor. May I have a few moments to consult with my co-counsel?

THE COURT: Sure ... Do you have your strikes for cause? And if you do them in numerical order, it would be helpful.

MR. JOHNSON: First, for the record, Plaintiff has not been given an opportunity to full—full opportunity to voir dire this panel, and as such the Plaintiffs are not in a position to appropriately exercise their challenges for cause and have been hampered in their ability to determine which of these people should be challenged for cause.

We will challenge for cause, but we do not want that to be seen as any waiver of what we believe to be a very serious infringement on the right of these Plaintiffs to full and fair voir dire, which Missouri courts have held on a number of occasions must be done in order to fully develop information to select a qualified panel. We don't believe that that has been done, and don't believe that there is going to be a fair trial because of that.

Ten of the plaintiffs' thirteen challenges for cause, were sustained. Plaintiffs' counsel then made the following comments.

MR. JOHNSON: Finally, your Honor, we have not had the opportunity to develop the information necessary to challenge all of those who raised their hands with regard to the question concerning their opinions about medical malpractice litigation, personal injury, and product and other types of litigation in general; those who felt there were too many frivolous suits, those who felt there should be a cap on recoveries. We did not have the opportunity to make inquiry of all of those folks, and as a result, I'm sure there are some of them that should be stricken or that I should have good cause to strike that I simply do not have the information before me to do so.

Although no useful purpose is served by filing the unasked questions the next day, as plaintiffs' counsel told the court he would do, they were not filed as announced. It was not until the plaintiffs filed their motion for new trial that the questions were supplied to the court. Attached to the motion for new trial were 42 pages of mostly single-spaced, typewritten and handwritten notes covering the jury selection process. This unabridged listing has been shortened, on appeal, to 10 questions on damages which plaintiffs tell us are to be found in the 42 pages that were attached to the motion for new trial.

**Issue**

The primary issue presented by the parties is whether the trial court abused its discretion by limiting the plaintiffs' voir dire examination. The plaintiffs claim, on appeal, that the limitation prevented them from making an adequate inquiry on the subject of damages, which, in turn, denied them a meaningful exercise of their challenges. The plaintiffs' complaint focuses on the 30–minute warning given after the noon recess, arguing that the court's action was not prompted by a motion from the defendant, nor resulted from improper conduct by plaintiffs' counsel. The

defendant argues that the court did not abuse its discretion and further maintains that the record below was insufficient to inform the trial court of the claimed error.

The initial question presented by the plaintiffs is whether the trial court may limit voir dire examination at the outset of the trial or while voir dire is taking place. Although we do not regard the record as having been adequately preserved, we have addressed this issue because of its importance. We find that there was no per se abuse of the court's discretion in limiting the plaintiffs' overall examination to approximately 1¾ hours, or to "about a half an hour" following the noon recess.

### Purpose of voir dire

The essential purpose of voir dire is to provide for the selection of a fair and impartial jury through questions which permit the intelligent development of facts which may form the basis of challenges for cause, and to learn such facts as might be useful in intelligently executing peremptory challenges. *See State v. Skelton*, 851 S.W.2d 33, 35 (Mo.App.1993). It is designed to insure that the parties have fair and impartial individuals serving as jurors. *See State ex rel. Missouri Highway & Transp. Comm'n v. Buys*, 909 S.W.2d 735, 737 (Mo.App.1995).

### Control of voir dire

The "control of the voir dire is within the discretion of the trial court [and] only an abuse of discretion and likely injury will justify reversal." *State v. Parker*, 886 S.W.2d 908, 920–21 (Mo. banc 1994)(citing *State v. Bannister*, 680 S.W.2d 141, 145 (Mo. banc 1984)). While broad discretion is vested in the trial court in determining the propriety of the questions asked during voir dire, *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 866 (Mo. banc 1993), "no fixed and inflexible rule may be laid down which may determine the extent to which counsel may go in the examination of jurors upon voir dire." *State v. Crockett*, 419 S.W.2d 22, 26 (Mo.1967).

### Standard of review—Abuse of discretion

An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances then before the court, and is so arbitrary and unreasonable that "it shocks the sense of justice" and indicates a lack of careful consideration. *Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876, 881 (Mo. banc 1993). "Appellate review of the trial court's exercise of discretion does not pivot on whether reviewing court would have exercised its discretion in a like manner, but whether trial court abused its discretion." *In re $29,000.00 in U.S. Currency*, 682 S.W.2d 68, 75 (Mo.App.1984). "On appeal, discretionary rulings are presumed correct, and the appellant bears the burden of showing the abuse of discretion." *Anglim v. Missouri Pac. R.R. Co.*, 832 S.W.2d 298, 303 (Mo. banc.1992).

### Reasonable latitude allowed in voir dire examination

Missouri law allows a reasonable latitude in examining prospective jurors on voir dire about possible bias. *Littell v. Bi–State Transit Dev. Agency*, 423 S.W.2d 34, 37 (Mo.App.1967); *Peth v. Heidbrier*, 789 S.W.2d 859, 863 (Mo.App.1990). While it is proper that "counsel should be allowed reasonable latitude in the examination of prospective jurors, there are limits to the scope of permissible examination." *State v. Norton*, 681 S.W.2d 497, 498 (Mo.App.1984). "The right to question the jury panel is not absolute as it is hedged with restrictions to insure that the inquiry is not perverted." *Littell*, 423 S.W.2d at 37. However, the voir dire process "is also one of the highest duties of courts, in the administration of the law concerning selection of jurors and juries, to seek to accomplish that purpose [of an impartial jury]." *Id.* at 38 (citing *Lee v. Baltimore Hotel Co.*, 345 Mo. 458, 136 S.W.2d 695 (1939)).

### Lack of Warning

Initially, we review the suggestion that the court limited voir dire to 30 additional minutes without prior warning. The record reveals that during a pre-trial conference, held a number of days before commencement of the trial, the parties were

advised by the court that they could expect testimony to begin on the day the jury was selected. It is apparent that if evidence is to be presented on the first day, the examination of the jury panel must be concluded close to mid-afternoon. Furthermore, the direction to counsel to complete voir dire "in about a half hour" was preceded before the noon recess by the court's admonition "to expedite [your questions] and move along ... So, I would ask that you expedite the matter." Following the noon recess, the court advised counsel that he "should conclude his voir dire examination in about a half an hour." Thus, the imposition of a time limitation was not unexpected, it having been preceded on two occasions with warnings that the length of voir dire was not unlimited. However, setting a 30 minute time limit on the voir dire examination immediately before counsel was to resume his examination placed an unnecessary burden on trial counsel. We do not encourage fixed time limitations on counsel's examination. If the 30–minute admonition had been given before the noon recess, this problem may not have arisen. The court must be mindful of the attorney's problems. An earlier warning would have allowed counsel more time in which to structure his voir dire examination to insure his questions were asked within the time allotted.

**Per se abuse of discretion by limiting voir dire**

Plaintiffs maintain that the imposition of a time limitation, whether with or without a prior warning, was a per se abuse of discretion. Neither the parties, nor our research, have located a Missouri case that discusses time limitations imposed on a voir dire examination.[1] The plaintiffs refer us to other jurisdictions, principally Texas, for cases which have addressed the issue. The plaintiffs place reliance on *De La Rosa v. State,* which held that a time limitation of 30 minutes was reversible error. 414 S.W.2d 668, 669 (Tex.Cr.App.1967). Also, in *Thomas v. State,* the Texas appellate court held that a 35 minute limit was unduly restrictive. 658 S.W.2d 175, 176 (Tex.Cr.App.1983). The plaintiffs also cite to *People v. Hernandez,* which disapproved of a limitation of a total of 30 minutes for each side. 94 Cal.App.3d 715, 156 Cal.Rptr. 572, 574 (1979). Three other cases are cited in support of plaintiffs' argument. In *State v. Roberson,* the Connecticut Supreme Court held that a one-hour limitation was arbitrary and an abuse of discretion. 173 Conn. 102, 376 A.2d 1087, 1088 (1977). In *State v. Strange,* a 10–minute limitation was held to be reversible error. 619 So.2d 817, 819 (La.Ct.App.1993). *See also Ratliff v. State,* 690 S.W.2d 597, 598 (Tex.Cr.App. 1985) (holding that a one hour limitation was an abuse of discretion).

The defendant, on the other hand, directs us to cases from sister states which indicate that the limitation applied here was within reasonable standards. For example, in *Santos v. State,* the court held that a one-hour time limit on the defendant's voir dire was not an abuse of discretion where counsel did not show the trial court the questions he would have asked if he had been allowed additional time. 681 S.W.2d 208, 210 (Tex. App.1984). In *Whitaker v. State,* the appellate court ruled that there was no abuse of discretion in limiting defendant's voir dire to 50 minutes. 653 S.W.2d 781, 782 (Tex.Cr. App.1983). *See also People v. Garrow,* 151 A.D.2d 877, 542 N.Y.S.2d 849, 851 (1989) (finding no abuse of discretion of 10 minutes to each side in each of the first three rounds, and three minutes in the fourth round where trial counsel had provided extensive questions for the court to ask the jury beforehand).

Illustrative of this point is *Linder v. State,* where the state was asking for the death penalty. 485 N.E.2d 73, 75 (Ind.1985). Jury selection was complicated by extensive pretrial publicity, coupled with a denial of the defendant's motion for change of venue. *Id.* at 75–76. Most of the panel members had heard of the case. *Id.* The trial court was relying heavily on the voir dire examination to choose an impartial jury. The court limited each party to two hours for each panel of

---

1. *State v. Parker,* 886 S.W.2d 908 (Mo. banc 1994) considered a time limitation of two days in which to qualify a death penalty jury. The court reviewed the issue under "plain error" and found no manifest injustice.

12, and an additional five minutes for each individual panelist. *Id.* at 76. The Indiana Supreme Court held that the time constraints placed on voir dire by the trial judge was not an abuse of discretion. *Id.* at 77. In reaching this determination, the court reviewed 27 questions that counsel was not allowed to ask and concluded that the questions had been covered by the court or by counsel. *Id.*

The facts of this case are quite different from those cases cited by the plaintiffs, not only as to the amount of time allowed for voir dire (a total of approximately one hour and forty-five minutes) but also how and when the time limitation was imposed. The trial court did not limit the time of counsel's examination as severely as in the cases cited by plaintiffs. A careful reading of the cases on which plaintiffs rely demonstrate rather clearly that the trial judges imposed a fixed time limit at the outset, without any consideration of the many variables of voir dire examination. The longest voir dire held to be an abuse of discretion was one hour. *See Ratliff,* 690 S.W.2d at 601; *State v. Roberson,* 376 A.2d at 1088. In none of the cases cited by the plaintiffs did counsel have approximately one hour and forty-five minutes to complete the examination. In the case before us, the trial court did not impose unyielding or rigid time limits, at the outset or elsewhere.

Many of these cases acknowledge the trial court's obligation to dispatch its business with promptness. However, they also recognize the dangers of arbitrary, unyielding time limits because of the unpredictability of the panel member responses which make it difficult to successfully determine beforehand the amount of time necessary to successfully complete a voir dire examination. *See Thomas,* 658 S.W.2d at 176; *Hernandez,* 156 Cal.Rptr. at 573. Time limits cannot be set without regard to the variable latitude which is reasonably necessary to accomplish the purpose of voir dire. *See Roberson,* 376 A.2d at 1088. When a court imposes time limits on voir dire examination, it must exercise great caution to avoid an abuse of discretion. *See Strange,* 619 So.2d at 820. While the efficient administration of jury resources is to be encouraged, it can not be accomplished at the price of an arbitrarily limited voir dire examination.

There was no per se abuse of discretion in limiting plaintiffs' voir dire, which continued for approximately one hour and forty-five minutes, where the parties had been previously provided with written questionnaires covering general information of each panel member and the court had also covered other areas of juror qualifications. The time restriction, under the circumstances described, was not an abuse of discretion.

**Preservation of the record**

The defendant maintains that there was not an adequate record made to preserve the matter for appellate review. The plaintiffs' respond that the record was preserved. Plaintiff's statement to this court: "[t]he bottom line is that the questions [plaintiffs] sought to ask were presented to the trial court not only in the form of the written questions ... but also in a somewhat abbreviated oral form by counsel at the close of voir dire." The plaintiffs' reference to the "written questions" is to the 42 pages attached to their motion for new trial, and the "somewhat abbreviated oral form [of preserving the record]" denotes the subjects (medical malpractice litigation, etc.) mentioned by plaintiffs' counsel after the court had recessed to make the jury strikes.

**Sufficiency of Objection**

The purpose of an objection is to eliminate error, if possible, by allowing the trial court to rule intelligently. *See Schmitz v. Director of Revenue,* 889 S.W.2d 883, 886 (Mo.App.1994). It is a settled principle of Missouri trial practice that to preserve trial court error it is necessary to give the trial court the first opportunity to correct the error, *State v. Jordan,* 751 S.W.2d 68, 75 (Mo.App.1988), without the delay, expense, and hardship of appeal and retrial. *See Pruitt v. Community Tire Co.,* 678 S.W.2d 424, 429 (Mo.App.1984). The rule "will be strictly enforced to effectuate [its] intended purpose." *Id.* (citations omitted). Its purpose is the delivery of expeditious, and expectantly, a fair trial. Otherwise, the rule's purpose is defeated if the error receives its first review in the appellate court. The re-

quirement that the trial court be given the first opportunity to correct the error is incorporated into our rules, which state: "allegations of error *not presented to* or expressly decided by the trial court shall not be considered in any. civil appeal from a jury tried case." Rule 84.13(a) V.A.M.R. (emphasis added).

■ Missouri courts have routinely required that the party aggrieved by a ruling provide more than a barren objection. The trial court must be informed in what manner its ruling was incorrect. In that respect, since affirmative action was necessary to accomplish anything in this case, it was incumbent upon the plaintiffs to make known what action they desired the court to take, *State v. Brown*, 364 Mo. 759, 267 S.W.2d 682, 690 (1954), and the plaintiffs had the burden of making the basis of the objection reasonably apparent to the trial court. *See Hayes v. Hudson Foods, Inc.*, 818 S.W.2d 296, 300 (Mo.App.1991). A proper objection must call the court's attention to what is lacking. *Pazdernik v. Decker*, 652 S.W.2d 319, 321 (Mo. App.1983).

The requirement that the trial counsel has a duty to preserve the record by presenting the basis for an objection, and how that should be accomplished, is not new to the voir dire process. *See State v. Dixon*, 717 S.W.2d 847, 848 (Mo. banc 1986). Missouri case law declaring counsel's duty dates at least to *Collins v. Kamper*, where the defendant objected to a voir dire question without stating grounds for his objection. 272 S.W. 1053 (Mo.App.1925). The appellate court held that counsel "must not only make timely objection thereto, but must state the grounds therefore." *Id.* at 1054. Also, in *Howlett v. Randol*, the defendant did not give the basis for his objection at the time the alleged error occurred during the voir dire examination. As a result, the appellate court held that there was no appellate review. 39 S.W.2d 463, 464 (Mo.App.1931). *See also McDonnell v. Cornelison*, 25 S.W.2d 558, 561–61 (Mo. App.1930).

■ In this case, the plaintiffs argue that they provided the grounds for their objection by virtue of counsel's "oral statement" to the court, as well as in the voir dire questions filed with the motion for new trial. The oral statement was made after the jury panel was released, the court had convened with counsel to select the jury, and challenges for cause had been made. Missing from the record, when plaintiffs' counsel completed his examination, are any grounds informing the trial court of the basis for terminating his examination. There is no request for any relief.

A number of other Missouri cases have discussed the obligation of trial counsel during voir dire to make the trial court aware in what respect its ruling was incorrect during the voir dire process. In *State v. Brown*, a juror's age disqualified him, and counsel informed the court about the statute that rendered the juror ineligible. 364 Mo. 759, 267 S.W.2d 682, 691 (1954). The Missouri Supreme Court stated that in order to preserve the record "a party, at the time the ruling or order is ... sought, makes known to the court that action which he desires the court to take." *Id.* 267 S.W.2d at 690. On rehearing, the court held that it would not be in the interest of the administration of justice "to hold that by merely making some statement in the record, without a request for any action by the Court (when affirmative action would be required to accomplish anything), a party can claim the Court erred in failing to take some action which was not requested." *Id.* at 691.[2]

■ A litigant's "method of challenging a trial court's ruling on permissible voir dire questions should be specific," pursuant to the ruling of *State v. Brown*, 547 S.W.2d 797, 800 (Mo. banc 1977). For example, in *State v. Townsend*, the court indicated that preservation of the record may be accomplished in any number of ways, including "rephrasing

---

**2.** In *State v. Jenkins*, the Supreme. Court again found no abuse of discretion by the trial court in its control of voir dire, when the appellant failed to develop what additional inquiry he may have wished to make. 494 S.W.2d 14, 18 (Mo.1973).

Likewise, in *State v. Coats*, no abuse of discretion was found because the defendant "made no attempt to restate the question properly." 835 S.W.2d 430, 433 (Mo.App.1992).

the question or making a record at the bench." 593 S.W.2d 639, 640 (Mo.App.1980).

Any doubt of counsel's obligation to inform the trial court of the voir dire question he proposes to ask, was laid to rest by the Missouri Supreme Court in *State v. Dixon.* 717 S.W.2d at 848. The trial court in *Dixon* refused to allow appellant to ask the panel whether they could consider the lesser included offense of manslaughter. Appellant made an "offer of proof" wherein the attorney identified the area of inquiry, and why he should have been allowed to ask the question. The "offer of proof" did not, however, give the trial court any indication of the areas of inquiry that appellant wished to pursue, *nor did it formulate a question for the trial court's consideration. Id.* Judge Blackmar, speaking for the Court, stated that "it is entirely appropriate to require strict compliance" with the method for preserving a claim of error. *Id.* at 849. "The trial court had no obligation to frame the question for [counsel]," and "the trial court's rulings were in accord with the existing case law." *Id.* at 848.

Missouri has a well-defined method of preserving trial court error for appellate review of the voir dire examination. The objection here fell short because, when affirmative relief was needed, no basis was given for the objection in the form of the unasked questions. The plaintiffs' objection failed to supply what additional inquiry counsel wished to make. *See Jenkins,* 494 S.W.2d at 18; *Dixon,* 717 S.W.2d at 848. Because the objection failed to inform the court, it is considered nothing more than a general objection, which preserves nothing for review. *See Wilson,* 888 S.W.2d at 750. An assignment of error must be *first* presented to the trial court rather than the appellate court. Any other holding violates this fundamental principle of trial practice, and importantly, it is disruptive to the opposing counsel who has a right to rely on it.

Furthermore, there was not a request for more time to ask the questions which are now identified as having denied the plaintiffs a fair trial. The failure to request additional time was an important factor in *State v. Parker.* 886 S.W.2d 908 (Mo. banc 1994).

Parker's counsel failed to object to the trial court's limitation of two days in which to qualify a death penalty jury. *Id.* at 921. The court noted that not only did he fail to object, but that he did not request additional time to question the jury panel. Parker's counsel, if he believed his time had been inappropriately limited, should have requested additional time if he wished to preserve the error. *Id. See also Savant v. Lincoln Eng'g.,* 899 S.W.2d 120, 123 (Mo.App.1995). As Judge Berrey noted in *Clark v. Board of Directors of the School Dist. of Kansas City:*

> We find unconvincing appellant's argument that any objection to the time limits imposed by the Board would have been futile. Such an objection may or may not have been futile. We will never know how the Board might have responded because no objection was made by appellant despite having the opportunity to do so.

915 S.W.2d 766, 773 (Mo.App.1996). Because counsel made no request for additional time, we will never know whether additional time would have been forthcoming.

The plaintiffs maintain, however, that the objection was more than a general one. They contend that the trial court was informed of the grounds in that "[t]he bottom line is that the questions [plaintiffs] sought to ask were presented to the trial court not only in the form of the written questions ... but also in a somewhat abbreviated oral form by counsel at the close of voir dire."

**Timeliness of the oral statement**

 After the jury had been released from the court room, the court and counsel retired to make strikes. Strikes for cause had been made. At this point counsel made his "oral statement" about his inability to develop the subjects of medical malpractice litigation, personal injury, product and other litigation, frivolous lawsuits, and caps on recoveries. He maintains that this was sufficient to preserve the matter for appeal.

 An untimely objection may be deemed waived or abandoned. *See Business Men's Assurance Co. of America v. Graham,* 891 S.W.2d 438, 455 (Mo.App.1994). If a litigant desires to complain of the trial court's action, if affirmative action is needed,

it must be called to the court's attention at the time when the error first appears. *Brown v. Thomas*, 316 S.W.2d 234, 237 (Mo. App.1958). Failure to do so when the opportunity presents itself is a waiver of the claimed error. *Id.* "One cannot sit by and gamble on the outcome and, if he loses the gamble, then, for the first time, make a tergiversating objection. If he chooses to gamble he must abide his wager." *Id.* (citations omitted.)

*Stucker v. Rose* is a case factually similar to the one before us. 949 S.W.2d 235, 236 (Mo.App.1997). The trial court sustained plaintiff's objection to defendant's comments made during voir dire. Plaintiff told the court he would make a record later. He moved for a mistrial when counsel and the court were in conference, following the voir dire. *Id.* The trial court denied the motion, and the Southern District affirmed, relying on *McMillin v. Union Elec. Co.*, 820 S.W.2d 352 (Mo.App.1991). The *Stucker* court denied relief because the plaintiff's request for a mistrial was made after the voir dire was completed and during an in-chambers jury selection conference. *Stucker*, 949 S.W.2d at 237–38. Any request for affirmative relief after the error had passed was untimely. *Id.*

*Douglass v. Safire* stands for "the usual rule that the trial court must be given the opportunity to correct error while correction is still possible." 712 S.W.2d 373, 374 (Mo. banc 1986). Appellant in that case did not object until after the jury was discharged. The Supreme Court held that appellant's claim of error was waived, and stated that "[o]ur holding is in accord with the usual rule that the trial court must be given the opportunity to correct error while correction is still possible." *Id.* Appellant's position placed the entire burden of discovering the error on the trial court. The Court responded that "[n]o square decision of ours is cited in support of the proposition" that appellant did not have to present the issue to the trial court first, while it was still possible to correct the error. *Id.*

Finally, in *M & A Elec. Power Coop. v. True*, the trial court was charged with error in not granting a mistrial when defendant's counsel injected "financial conditions" and other prejudicial statements before the jury during voir dire examination. 480 S.W.2d 310, 314 (Mo.App.1972). No objection was made at the time the prejudicial remarks were made. At the close of the voir dire examination, plaintiff made a motion for mistrial. The appellate court held that the motion at the close of the voir dire examination was not timely, and thus no reversible error could be predicated upon the denial of the motion. *Id.* at 313.

If the error is to be corrected, the oral statement setting forth the grounds for the objection must have been made when counsel stopped his examination *sua sponte*. It was then that the court should have been informed of the questions that remained unasked. Listing additional subjects of inquiry after challenges for cause had been made and ruled upon, was too late.

**Written questions**

 It is also argued that plaintiffs' 42 pages of voir dire questions attached to the motion for new trial preserved the record. However, the trial court should not be required to sift through an unabridged version of questions to locate proper questions. The court in *Barrett v. State*, stated it appropriately:

> [C]ounsel in the case at bar sought to extend the voir dire proceedings indefinitely by proposing to propound an unspecified number of additional questions to the panel. His request did not state why he required additional time in this particular case, nor did his unorganized array of questions present the court with a concise proposal upon which to base his decision on whether to continue voir dire or not.

516 S.W.2d 181, 182 (Tex.Crim.App.1974). This court will not sanction this method of preserving the record.

The dissent volunteers yet another theory which would excuse the need to make a record. If the trial court's ruling is based on an incident "extraneous to the proceedings," it is suggested that we may forego the objection, because to make one would be futile. It is contended that the futility argument is bolstered because the trial court agreed to allow the questions to be filed later. The

event, which is considered "extraneous to the proceedings" arose out of the court's discussion with an individual who apparently coordinates the jury pool for the judges in Boone County.[3] It is puzzling how this incident can be viewed as tantamount to a judicial stone wall, incapable of change.

Just as mystifying is the certainty with which the dissent concludes that the judge agreed with counsel that he could file the unasked questions at a later time. Twice, when counsel announced that he would file the unasked questions at a later time, the judge responded: "You may do that," and "You may make a record." We are unable to conclude that this colloquy in some way signals an *agreement* to file questions at a later time in order to make a record. To identify this as an agreement is speculative; it ignores the fact that it is not the court's duty to make the record and that there was nothing filed the next day.

However, the key difficulty with the dissent's justification for excusing counsel from making a record, albeit a longstanding requirement of trial practice, is the belief that any objection would have been futile.[4] If there is any justification to the argument that an objection would have been futile, it is not because the court's reason was extraneous to the trial. However, appellate courts may not, on this record, engage in a guessing contest as to whether an objection would have been futile, absent a clear indication that it would be useless, as suggested by *Hyde v. Butsch*, 861 S.W.2d 819 (Mo.App. 1993). The factual situation in *Hyde*, which is discussed in the dissent, is quite different from what took place in this case.

Our courts have been quite consistent in repudiating the futility argument; most recently by this court in *French v. Missouri Highway & Transp. Comm'n*, 908 S.W.2d 146 (Mo.App.1995). French's counsel contended that any objection to his opponent's closing argument would have been futile, because the objection would have been too late to introduce contrary evidence and a cautionary instruction would have only highlighted the issue for the jury. *Id.* at 151–52. The court held that "[c]ounsel had no right to ignore his obligation to object and to request a cautionary instruction so that the trial court could exercise its discretion to determine whether a cautionary instruction was either necessary or adequate in the circumstances." *Id.* at 152. In *Dunn v. St. Louis–San Francisco R.R. Co.*, the Supreme Court remarked that although defense counsel vigorously and successfully objected to questions designed to vilify the defendant's billing practices, he voiced no objection when the question was asked of one witness. 621 S.W.2d 245, 251 (Mo. banc 1981). The defendant's contention that any objection "would have been futile," did not excuse defense counsel's failure to object. *Id.* at 251. In *Clark v. School Dist. of Kansas City*, this court again rejected the argument that an objection would have been futile. 915 S.W.2d at 772. We observed that the rules of practice are designed to promote the ends of justice, not to defeat them. *Id.* (citing *Mills v. Federal Soldiers Home*, 549 S.W.2d 862, 868 (Mo.1977)). Our research has failed to find any factually similar cases, which have excused an objection because it would have been futile to make the objection.

The Missouri Supreme Court has cautioned that refuge cannot be found by negligently failing "to make proper objections ... because the trial situation may be considered 'difficult to deal with by objections.'" *Critcher v. Rudy Fick, Inc.*, 315 S.W.2d 421, 428 (Mo.1958) (citations omitted). To waive the requirement of an objection, for whatever reason, sends a confused message to the bar and unnecessarily increases the expenses and

---

**3.** The notion that this sketchy discussion was the event that caused the limitation of voir dire and, therefore, could not have changed the judge's mind if appropriately handled, ignores what takes place in every multi-judge courthouse in this state, every week of the year. It is not unique to this case. It is plausible that the proper utilization of the jury pool may have been part of the court's reason. However, an appellate court should not speculate that remarks by the judge concerning the court's responsibility to monitor its jury pool, formed the sole basis for her decision.

**4.** Interestingly, the plaintiffs do not argue that to have objected would have been futile. Indeed, neither the transcript nor their brief suggests that they viewed the matter as futile.

delay of litigation. A court's discussion about the effective utilization of jurors should not automatically and irrevocably stamp an objection as futile and, as such, delegate the first opportunity of correcting the error to the appellate court.

**Conclusion**

By affirming this judgment, we are not placing our stamp of approval on trial court's imposition of time limits on voir dire examinations. In all likelihood, such action may unnecessarily jeopardize a party's full opportunity to voir dire prospective jurors. We are satisfied that trial counsel and judges are capable of conducting adequate voir dire examinations without the necessity of imposing uncompromising time limitations.

The judgment is affirmed.

ULRICH, C.J., BERREY, BRECKENRIDGE, SPINDEN, SMART and HOWARD, JJ., concur.

LAURA DENVIR STITH, J., dissents in separate opinion filed.

LOWENSTEIN, ELLIS and EDWIN H. SMITH, JJ., concur in opinion of LAURA DENVIR STITH, J.

LAURA DENVIR STITH, Judge, dissenting.

We concur in the basic principle invoked by the majority that, in order to preserve a claim that the trial judge improperly limited voir dire, counsel usually must inform the trial judge of the areas of necessary questioning which have not been covered, and request permission to ask necessary questions in those areas. We disagree with the majority's application of this principle to the facts of this case, however, and with its determination that this principle requires us to affirm the judgment below.

As discussed *infra,* the record below demonstrates that the trial judge did not limit voir dire to 30 additional minutes following the luncheon recess because she believed that plaintiff's counsel had concluded necessary questioning or was proceeding too slowly. Rather, she limited voir dire because she wanted a jury pool available by 2:30 p.m. so that the jurors could sit on another case.

Because the reason she limited the voir dire was extraneous to the proceedings, it would have been futile for counsel to provide the judge with a list of unasked questions, for she did not limit his questioning because she believed he had no more necessary areas to cover but rather because of matters which no offer of a list of specific questions could have changed. This fact is made clear by the fact that she agreed he could submit the unasked questions after the jury had been dismissed. She was well aware that at that point, even had he presented a list of necessary questions, it would have been too late to ask them. Accordingly, we believe that the issue of an improper limitation on voir dire was adequately preserved, and that on the facts of this case it requires remand for a new trial.

Because our approach to this case requires consideration of certain additional facts concerning the reason the judge wanted voir dire concluded by 2:30 p.m., we highlight those facts as they arose in the context of voir dire, and then address the legal issues raised by the appellants.

## I. EVENTS TRANSPIRING DURING VOIR DIRE

The jury venire was impaneled and sworn at about 9:30 a.m. on the morning of trial. The judge conducted a voir dire examination of the jury venire until 11:00 a.m., at which point the parties struck several venirepersons for cause. Plaintiffs' counsel then initiated his voir dire. At 12:10 p.m. the judge excused the potential jurors for lunch. She then told counsel that there were:

> *25 jurors left over from [another] case. And I've asked that they return at 2:30. I want as close as possible to be finished with the voir dire in this case by that time. And I realize Defense Counsel hasn't had a chance to ask any questions. And I guess Plaintiffs' Counsel has had about a little over an hour at this point. So we need to move along.*

(emphasis added). When counsel for plaintiff said "I've got quite a bit more, your Honor," the judge responded:

Well, you need to expedite it and move along so that we'll—I'm not sure that we have a jury out of this panel yet. And I mean they haven't—*all the questions haven't been asked obviously. And I do not want people hanging around the courthouse waiting for voir dire.* So I would ask that you expedite the matter.

(emphasis added). Counsel said he would go as rapidly as he could. Before the jury even returned to the courtroom after lunch, however, the trial judge said:

THE COURT: *Just so that we will know, ground rules, Plaintiffs will conclude their voir dire in about a half an hour.* And then Defense will each be given an opportunity to do the voir dire.

MR. JOHNSON [PLAINTIFFS' COUNSEL]: *Your Honor, I won't be able to finish my voir dire in half an hour.*

THE COURT: *Well, you need to because we're going to conclude that and allow the Defendants to proceed at that time.*

MR. JOHNSON: Your Honor, I would like to submit the questions that I would want to ask at some point that I'm not going to be allowed to ask because I think I am going to be deprived of a fair trial if I am not allowed to do complete and full voir dire for my client. So at some point, if you cut me off, I would like to have the opportunity to present to you all of the questions which I'm not going to be able to ask so they can be in the record.

THE COURT: You can make a record. Return the jury to the courtroom.

(emphasis added). When the jury returned to the courtroom, plaintiffs' counsel continued his questioning for about thirty minutes. Towards the end of his questioning, plaintiffs' counsel asked the jury venirepersons about their opinions on the number of lawsuits and the size of damage awards, stating that one of the jurors had:

brought up a subject *which I actually have several questions on, but I'm not going to go into all of them.* But I want to ask you this question.

How many of you feel the same as [another venireperson] about medical malpractice cases or about lawsuits in general,

that there is too many, that the jury verdicts or settlements that you've heard of are outrageous, or that some of the facts you've heard of are outrageous? How many of you feel that way?

(emphasis added). Several jury venirepersons raised their hands, and plaintiffs' counsel questioned some of them individually. He asked them all whether they would be able "to set those feelings aside and be totally fair to Jim and to Larry and to us who are presenting the case on their behalf." All but one person (later stricken for cause) indicated that they could do so.

Plaintiffs' counsel then asked two more questions, the last of which required the venire persons to state whether they thought they were persons the plaintiffs would want to serve on the jury. Counsel questioned those who indicated views on this issue, and asked the remaining jurors by rows if they thought they were persons whom the plaintiffs would want to serve. He then stopped questioning *sua sponte* and stated:

*Your Honor, as you know, I do have other questions, but I'll just submit those to you later. I'm not really concluded, but I am concluding because of the time constraint.*

(emphasis added). The trial judge then turned voir dire questioning over to counsel for the defendant doctors and gave them about forty-five minutes for questions.

While defendants did not object below, and do not object in this court, to this limitation on their voir dire time, at the close of voir dire plaintiffs' counsel again indicated he felt his voir dire was unduly limited, although he did not then submit a list of unasked questions. Instead, he asked the judge for permission to submit on the following day a list of the questions he would have asked the jury venirepersons. The trial judge *accepted* plaintiffs' counsel's suggestion.

A few minutes later, when making his challenges for cause, plaintiffs' counsel again brought up the issue of limitations on voir dire, stating:

First, for the record, Plaintiff has not been given an opportunity to full—full opportunity to voir dire this panel, and as such the

Plaintiffs are not in a position to appropriately exercise their challenges for cause and have been hampered in their ability to determine which of these people should be challenged for cause.

Counsel then made certain challenges for cause, and concluded:

Finally, your Honor, we have not had the opportunity to develop the information necessary to challenge all of those who raised their hands with regard to the question concerning their opinions about medical mal practice litigation, personal injury, and product and other type of litigation in general; those who felt that there were too many frivolous suits, those who felt there should be a cap on recoveries. We did not have the opportunity to make inquiry of all of those folks, and, as a result, I'm sure there are some of them that should be stricken or that I should have good cause to strike that I simply do not have the information before me to do so.

While counsel thus directed the court to the damage-related areas in which he still believed questioning was required, he did not submit a list of questions the following day as he had been granted permission to do. Even had he done so, however, it is unclear what purpose this would have served, as the jury had already been selected and trial had begun.

## II. THE TRIAL JUDGE ABUSED HER DISCRETION IN LIMITING THE TIME FOR VOIR DIRE

While Missouri courts have not previously specifically addressed the parameters of the trial court's authority to impose a fixed time limit on voir dire, we agree with the majority that the basic rules governing voir dire are well-settled and apply to the issue before us. We also agree with the majority that the total time given counsel for voir dire was not so short as to be *per se* unreasonable. To the contrary, the voir dire as a whole started at 9:30 a.m. and did not conclude until the middle of the afternoon. Certainly, in most cases, this could be an adequate period for voir dire, and it would not be an abuse of discretion to limit voir dire to this amount of time, at least where counsel was told at the outset that such a limitation would be imposed. Indeed, voir dire is often completed in considerably less time. The amount of time allowed was not on its face unreasonable.

We disagree with the majority to the extent it implies that the reasonableness of the time given for voir dire can be determined by its length alone, without consideration of the full context of the situation in which the voir dire occurs. Different legal issues and different jury pools may require vastly different voir dire examinations. Plaintiffs argue that this case warranted a lengthier voir dire because it centered on complex medical malpractice issues and because a large number of the jury venirepersons had some connection to the health care industry in Columbia, where the trial was held.

Equally importantly, they note, the first hour and one-half of voir dire was conducted by the court, not by plaintiffs' counsel. Counsel only began his voir dire at 11 a.m., and had continued for about one hour and ten minutes at the time the parties broke for lunch. No objection had been made by opposing counsel that voir dire was moving too slowly or unnecessary questions were being asked, and the judge had not asked counsel to move along his questioning or indicated that he was asking unnecessary questions. Neither had she indicated prior to the lunch break that she might need some of the jurors for another panel later that afternoon, nor indeed had she indicated that there would be any limitations on voir dire at all.

Indeed, prior to trial the court and parties discussed that because of the anticipated length of the trial the initial 60–member panel might not be adequate and that the start of the trial might have to be delayed so that a second group of jurors could be called in and questioned. As the majority notes, at the pretrial conference, the court had asked, "Are you going to have witnesses ready to go on the 23rd *in the event* we get a jury selected before the end of the day?" Counsel had answered affirmatively, and in her pretrial order the court noted that counsel had said that they would be ready to proceed with the presentation of evidence on the opening day of trial when the jury selection

was completed. She also noted, however, that she usually concludes her "daily sessions between 5 and 6:30 p.m." Contrary to the majority, we do not believe that counsel should have realized on these facts that the judge would end voir dire at around 2:30 p.m., or that she would not permit voir dire to fill the entire first day if necessary.

In any event, it was only at lunchtime, in the middle of voir dire, that counsel first learned his voir dire would be limited to 30 more minutes. At that point, it was too late to tighten up the questions he had already asked, and in any event most of the questioning had been done by the judge, not by counsel. For these reasons, looking at the length of voir dire already completed does not provide the total picture. We find it at least equally relevant that counsel was given only 30 minutes notice to complete his questioning. A number of cases from other jurisdictions cited by the majority indicate that had that been the total period allowed for voir dire it would in such a case have been unreasonable on its face.

We also agree with plaintiffs that we cannot consider the reasonableness of the limitations on voir dire without considering the rationale for those limitations. It is within the judge's discretion to indicate to counsel that the judge believes that voir dire needs to be concluded soon and that counsel should proceed accordingly or finish his questioning by a certain time. In deciding to issue such a direction, it would not be inappropriate for the judge to consider matters such as that, if voir dire were completed soon, the jurors would be free to sit on another panel in another case later that same day. Efficient administration of justice is a worthy goal. It cannot take precedence, however, over the need to see that the parties in the case before the court have an adequate time for voir dire. This means that such a limitation on voir dire should not be issued if the only reason for doing so is that the jurors are needed elsewhere, nor should it be done without reasonable notice.

Here, the judge herself neither suggested that the reason she was limiting voir dire was that she believed that all necessary questions had been asked, nor that she thought counsel was being repetitious, nor had she previously cautioned counsel to speed up his questioning, nor indicated that his manner of questioning was unduly slow or was causing unnecessary delay. Yet, she nonetheless told counsel after lunch that she knew that all needed questions had not yet been asked, but that plaintiff nonetheless needed to finish voir dire in 30 minutes. When told by counsel that he could not do so, she replied, "Well, you need to because we're going to conclude that and allow the Defendants to proceed at that time." So far as the record shows, it thus appears that she did so solely for reasons extraneous to the case before her; more specifically, the fact that another jury panel was to be formed at 2:30 p.m. that afternoon and the judge wanted members of her panel who did not serve on the jury to be available at 2:30 p.m.

While a trial judge has considerable discretion in controlling the nature and extent of voir dire, that discretion does not extend to limiting voir dire in so severe a manner, without reasonable notice that voir dire would be limited in time, and for reasons which are not related to whether voir dire has been adequate but rather are based on matters extraneous to the case before the court, all of which occurred here. We therefore would find the trial court erred in limiting voir dire as she did.

### III. A SHOWING OF PREJUDICE IS REQUIRED

We now reach the question of whether this error requires reversal. The parties dispute whether appellant must show prejudice in order to show reversible error as a result of a ruling on a matter, such as voir dire, the limits of which are committed to the trial judge's discretion.

Plaintiffs argue that they are not required to show prejudice and that a party in a civil matter simply needs to show he or she was prohibited from asking a legitimate question on voir dire, in order to be entitled to a new trial. In support, plaintiffs cite us to *Ivy v.*

*Hawk*, 878 S.W.2d 442 (Mo. banc 1994).[1] In *Ivy*, the trial judge erroneously refused to permit plaintiff to ask prospective jurors "the insurance question." Defendant argued that in order to obtain a new trial, plaintiffs were required to show that prejudice resulted from the failure to ask this question. *Ivy* disagreed. In so doing, it noted:

> The denial of the right to ask a proper "insurance question" is an issue of law.... A trial court has no discretion when ruling on an issue of law in a motion for new trial.... The trial court, therefore, should have granted the plaintiffs' motion for new trial because they submitted a proper "insurance question."

*Id.* at 445 (citations omitted).

*Ivy* thus held that, because plaintiff had an unqualified right to ask the insurance question, the denial of that right was automatically prejudicial. *Id. Ivy* carefully distinguished this situation from the situations cited by the *Ivy* defendant in which plaintiffs were required to show prejudice when the trial court refused to let plaintiffs ask follow-up questions after they had asked the insurance question. It noted that, unlike the insurance question, whether to allow such follow-up questions is committed to the trial court's discretion. To be entitled to a new trial on matters committed to the trial court's discretion, it indicated, one must thus show prejudice resulting from that abuse of discretion. *Id.* at 446.

## IV. APPLICATION OF LEGAL PRINCIPLES TO THIS CASE

Here, unlike in *Ivy*, plaintiffs were not denied permission to ask a specific approved question or to question in a specific approved area. Thus, normally, the general rule would apply that plaintiffs must show that prejudice resulted from the alleged abuse of discretion. *State v. Gray*, 887 S.W.2d 369, 382 (Mo. banc 1994), *cert. denied*, 514 U.S. 1042, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995); *State v. Parker*, 886 S.W.2d 908, 920–21 (Mo. banc 1994), *cert. denied*, 514 U.S. 1098, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995); *State v. Crockett*, 419 S.W.2d 22, 26 (Mo.1967); *State v. Robinson*, 831 S.W.2d 667, 669 (Mo.App.1992); *State v. Carter*, 771 S.W.2d 844, 845 (Mo.App. 1989); *State v. Norton*, 681 S.W.2d 497, 498 (Mo.App.1984). In a situation like this, of course, it would be difficult if not impossible to directly show that the improper questions affected the verdict, for the jurors cannot be questioned about their deliberations.[2] Reversible error can therefore adequately be shown by identifying for the trial judge specific proper areas of relevant questioning that counsel still needs to ask about and which have not been adequately covered by prior questions. The rationale for this requirement is clear: after hearing counsel's specific desired questions, the trial judge might correct his or her error and permit questioning in the desired areas. We agree with the majority that this is in keeping with Missouri's longstanding rule that "the trial

---

**1.** Plaintiffs also cite us to *Brines v. Cibis*, 784 S.W.2d 201, 204 (Mo.App.1989). It found the plaintiff therein entitled to a new trial without proving prejudice only because unqualified jurors were seated on the jury, however. While plaintiffs in this case did argue at the time they made their challenges for cause that they believed they may have had additional challenges for cause if they had been permitted to further question the jury about issues such as medical malpractice and the size of damage awards, they offered no support for this argument in their motion for new trial or on appeal other than three juror affidavits which state that other jurors considered the costs of medical insurance and health care in determining the size of the award. We cannot consider these juror affidavits, however. While plaintiffs say they are not using these affidavits to impeach the jury's verdict, there is no other way to describe their attempted use. Moreover, defendants properly objected to their use for this purpose below. As

a result, we may not consider the affidavits in reaching our decision. Jurors speak through their verdict, and their deliberations may not be used to impeach the jury's verdict. *See State v. Babb*, 680 S.W.2d 150, 152 (Mo. banc 1984); *McPherson v. David*, 805 S.W.2d 260, 263 (Mo. App.1991).

In any event, we are cited to no authority holding that the beliefs of these jurors as to the effects of large damage awards would have provided a basis for challenging these jurors for cause where, as here, the jurors who served all generally indicated that they could set aside their beliefs and reach a decision based on the law. Rather, it is asserted, knowledge of the jurors' beliefs would have made counsel's peremptory strikes more informed. *Brines* therefore does not control here.

**2.** *See* discussion *supra*, note 1.

court must be given the opportunity to correct error while correction is still possible." *Douglass v. Safire*, 712 S.W.2d 373, 374 (Mo. banc 1986). *See also State v. Dixon*, 717 S.W.2d 847, 848 (Mo. banc 1986). The rule allows trial courts to identify mistakes in time to correct them, perhaps obviating an appeal.[3]

While Missouri has not had occasion to apply these principles in the context of a case like this one, Texas has done so in *Thacker v. State*, 889 S.W.2d 380 (Tx.Ct.App.1994), *cert. denied*, 516 U.S. 810, 116 S.Ct. 57, 133 L.Ed.2d 21 (1995). Counsel in *Thacker* had filed a list of questions with the trial court at the close of his voir dire and stated that he would have asked "at least some of them." *Id.* at 390. On appeal, the court found no error. It refused to scrutinize the list of questions, stating "[t]his Court does not have the time nor the duty to peruse the extensive list of suggested questions in order to determine which ones defense counsel was prevented from asking, if any, and then guess which of those he wanted to ask." *Id.*

While we do not agree with *Thacker* that a specific list of questions is necessary, we do agree with the majority that in the usual case counsel must direct the court's attention to the areas in which voir dire has not yet been completed. Here, however, the judge specifically agreed to counsel's query whether he could submit unasked questions the day after the jury was chosen. In light of the fact that, prior to publication of this opinion, there has been no clear authority so requiring, we disagree with the majority that it was unreasonable for plaintiffs' counsel to believe that he could preserve this issue for review even without specifically directing the judge, prior to the close of voir dire, to the areas of questioning which he believed were improperly limited.[4] Indeed, our decision in this case is the first time that any Missouri court has advised counsel as to the procedure counsel should follow if the trial judge unduly limits the time for voir dire.

Equally importantly, the rationale for requiring submission of a list of unasked questions does not apply here. The purpose of submitting such a list is to inform the judge of relevant questions which have not been asked, so that the judge will have a basis on which to determine whether additional questioning is required in order to provide counsel with the information needed to fairly pick a jury. This is similar to the rationale for requiring an attorney to make an offer of proof. Such an offer serves two purposes:

> (1) to inform the court and opposing counsel of the substance of the excluded evidence in order that they may take appropriate action; and (2) to provide the appellate court with a record with which to determine whether the exclusion was erroneous and whether it created prejudice to the appellant.

*State v. Bowlin*, 850 S.W.2d 116, 118 (Mo. App.1993).

In this case, however, the trial judge did not limit questioning to only 30 additional minutes because she believed counsel had already adequately inquired into necessary areas. She did so because she wanted to make the unpicked jurors available to sit on another venire—a reason completely extraneous to the case before the court. This purpose is underscored by the fact that she gave counsel permission to submit a list of questions after the close of voir dire, for it would be self-evident that submission of unasked questions at that point would not assist the court in deciding whether sufficient voir dire had been conducted.

For this reason, we conclude that submission of a list of unasked questions would have been futile, and therefore should not be required by this Court in order to preserve the limitations on voir dire for appellate review.

---

**3.** This is similar to the rationale requiring offers of proof to be made to preserve error when a trial court erroneously sustains an objection to proffered evidence. *Great American Acceptance Corp. v. Zwego*, 902 S.W.2d 859, 865 (Mo.App. 1995). As voir dire questions are not evidence, the offer of proof rules are not directly applicable. Nonetheless, the same principles that underlie offers of proof apply to voir dire and other aspects of the trial.

**4.** In particular, one presumes that if the court had indicated that a later submission of a list of questions would not be acceptable, then counsel would have identified unasked questions for the court prior to the close of voir dire.

We disagree with the majority's conclusion that under Missouri law futility does not provide a basis for failing to object or make an offer of proof. To the contrary, numerous cases find futility does serve just such a purpose.

A case addressing this issue which is strikingly similar to the facts of this case is *Hyde v. Butsch*, 861 S.W.2d 819 (Mo.App.1993). In that case, the appellate court recognized that as a general rule courts will not consider an objection to the offer of evidence preserved in the absence of an offer of proof. It recognized that there are limited exceptions to this rule, however, such as where such an offer would be futile. *Id.* at 820–21. It found the case before it to be just such as case. There, as here, the case concerned improper limitation of time—in *Hyde*, however, the limitation was on the time for cross-examination rather than for voir dire. The trial court asked the jurors if staying past 5:00 p.m. would create any problems, and one juror said that it would. At 4:55, the court told plaintiff she had to complete her cross-examination in five minutes, and she objected. A few minutes later the court stopped the cross-examination, and counsel again objected. The witness, a doctor, indicated he could not return the following Monday, but the court dismissed him anyway, stating to plaintiff's counsel, "we can make the record at your convenience but the witness will step down." *Id.* at 821. Unlike here, plaintiff then told the court the specific areas of questions she had been unable to reach, but she did not make an offer of proof as to them, as is normally required in such a situation. Following a jury verdict for defendant, the trial court realized he had erred in limiting plaintiff's cross-examination and granted a new trial.

On appeal, the defendant argued that plaintiff had failed to preserve this issue for review because she had failed to make an offer of proof as to what testimony would have been adduced on further cross-examination. *Hyde* found that plaintiff had nonetheless preserved the issue for review, stating:

*In addition, it is apparent from the record that an offer of proof would not have affected the trial court's decision to ter-minate plaintiff's cross-examination of Dr. Dodd.... A party is not required to make an offer of proof if it is obvious that the offer would have been futile. Id.* (emphasis added).

*Bowlin, supra,* makes a similar point in a case which is also like this case in important respects. In *Bowlin,* a defense witness, for religious reasons, refused to take an oath before testifying. The trial court therefore refused to let the witness testify. On its own motion, the appellate court noted that defense counsel failed to make an offer of proof of what the witness would have said had he been permitted to testify, and considered whether the issue had been properly preserved in light of this omission. The court held:

*an offer of proof is not required when it would be futile and would serve no purpose. Here, it appears that an offer of proof would have been a useless gesture because the basis for exclusion dealt solely with the matter of the oath to be administered and had nothing to do with the content of the witnesses' testimony.*

*Bowlin,* 850 S.W.2d at 118 (emphasis added).

Of course, this is precisely the situation in this case. Additional questioning was denied not because of the content of the additional questions or of the questions already asked, but because of the extraneous issue of trying to dismiss the jurors in time for them to serve on another panel. There would thus be no point in giving the judge a list of areas of questioning, for that would not have affected the ruling, and we have adequate evidence on appeal to determine whether the ruling was erroneous without consideration of the specific questions still to be asked.

For these reasons, we find that the issue is adequately preserved despite the failure to identify specific additional areas of questioning for such an action would have been futile. Accordingly, we would reverse and remand for a new trial.

LOWENSTEIN, ELLIS and EDWIN H. SMITH, JJ., concur.