

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,                )
                                  )
    Respondent-Respondent,        )
                                  )
v.                                )     No. SD35317
                                  )
SCOTT A. REMSTER,                 )     **Filed:  Feb. 19, 2019**
                                  )
    Defendant-Appellant.          )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable David C. Jones

**<u>AFFIRMED</u>**

Scott A. Remster ("Defendant") appeals his convictions for assault in the first degree, *see* section 565.050, assault in the fourth degree, *see* section 565.056, and armed criminal action, *see* section 571.015.[1]  In three points on appeal, Defendant claims the trial court erred in limiting his *voir dire* to one hour and excluding evidence of a victim's ("Victim") plea deal and bond conditions in a criminal case the State had brought against Victim.  Finding no merit in these claims, we affirm.

---

[1] Unless otherwise indicated, all statutory references are to RSMo 2016.

**Evidence**

"We here recite the evidence as viewed in the light most favorable to the jury's verdict and give the State the benefit of all reasonable inferences that may be drawn from that evidence." *State v. Bookwalter*, 326 S.W.3d 530, 531 (Mo. App. S.D. 2010). Defendant was charged in Greene County as a persistent felony offender with two counts of the class B felony of assault in the first degree, and two counts of armed criminal action. The charges stemmed from actions that occurred on May 1, 2017, at Ron's Last Call ("Ron's"), a Springfield bar owned by Ron Dean ("Mr. Dean"). In addition to Defendant, Victim, and Mr. Dean, others present at Ron's that day included Joanna Jacob, Jeannine Estes and Chris Lowe.

The incident started with Defendant and Victim verbally arguing about Defendant's attitude, culminating with Victim telling Defendant, "[R]ight there is the door. . . . You can hit it[.]" When Defendant got off his bar stool, Mr. Dean went and stood between the two in an attempt to de-escalate the situation. Mr. Dean asked Victim to remain seated and asked Defendant to "sit back down and '[l]et's just cool off and everybody, you know, have a good time,' and [Defendant] wasn't having any of it."

When Defendant gave Victim what "was more or less an invitation to prove his manhood[,]" a comment Mr. Dean took to mean "an invitation to a physical altercation[,]" Defendant continued trying to get Victim to fight him, and Mr. Dean asked Defendant to leave. As Defendant was leaving, he continued his attempts to get Victim to come outside and fight him. Mr. Dean followed Defendant outside and Defendant

> kept mouthing and asking [Victim] to come out, and I told [Defendant], "Get the hell off my property. It's time for you to go." And he pulled a knife, and pardon my language, but he said, "I'll fuck you up, buttercup," and swung at

2

me a couple of times. I retreated and pushed the barstool towards him, and he kept coming on back into the building.

At that point, Victim intervened to protect Mr. Dean, and Defendant slashed at Victim with the knife, inflicting multiple wounds.

The jury found Defendant guilty of assault in the first degree and armed criminal action for his attack on Victim. It also found Defendant guilty of assault in the fourth degree for "stabbing at" Mr. Dean but not guilty of armed criminal action as to Mr. Dean. We will recite additional evidence as necessary to address Defendant's points.

**Analysis**

*Point 1 – Time Limit on* Voir Dire

In his first point on appeal, Defendant claims the trial court erred in limiting his *voir dire* to one hour because the nature and severity of the charges required more time in which to inquire of the panel, and the limitation prejudiced Defendant by preventing him from questioning the potential jurors on a number of specific issues that may have revealed their bias or prejudice.

We review a trial court's rulings regarding the conduct of *voir dire* "only for an abuse of discretion and '[a]n appellate court will find reversible error only where an abuse of discretion is found and the defendant can demonstrate prejudice[.]'" ***State v. Baumruk***, 280 S.W.3d 600, 614 (Mo. banc 2009) (quoting ***State v. Oates***, 12 S.W.3d 307, 311 (Mo. banc 2000)). Defendant "has the burden of showing a 'real probability' that he was prejudiced by the [alleged] abuse." ***Baumruk***, 280 S.W.3d at 614 (quoting ***Oates***, 12 S.W.3d at 311).

"One aspect of 'the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors.'" ***State v. Clark***, 981 S.W.2d 143, 146 (Mo. banc 1998) (quoting ***Morgan v. Illinois***, 504 U.S. 719, 729 (1992)).

> The essential purpose of voir dire is to provide for the selection of a fair and impartial jury through questions which permit the intelligent development of facts which may form the basis of challenges for cause, and to learn such facts as might be useful in intelligently executing peremptory challenges.

*Pollard v. Whitener*, 965 S.W.2d 281, 286 (Mo. App. W.D. 1998).

"While it is proper that 'counsel should be allowed reasonable latitude in the examination of prospective jurors, there are limits to the scope of permissible examination.'" *Id.* (quoting *State v. Norton,* 681 S.W.2d 497, 498 (Mo. App. E.D. 1984)). "The right to question the jury panel is not absolute as it 'is hedged with restrictions to insure that the inquiry is not perverted.'" *Pollard*, 965 S.W.2d at 286 (quoting *Littell v. Bi-State Transit Dev. Agency,* 423 S.W.2d 34, 37 (Mo. App. St.L.D. 1967)). "However, the voir dire process 'is also one of the highest duties of courts, in the administration of the law concerning selection of jurors and juries, to seek to accomplish that purpose [of an impartial jury]." *Pollard*, 965 S.W.2d at 286 (quoting *Littell*, 423 S.W.2d at 38).

During an October 19, 2017 hearing on pretrial motions, four days prior to trial, the trial court announced that it would first conduct its own *voir dire*, then allow both sides no more than one hour each to ask any additional questions of the panel. Defendant objected to the announced time limitation because "[t]his [charge] is an assault first" and he would for that reason like more latitude in conducting *voir dire*. The trial court responded: "[y]ou have an hour." The trial court stated that it was "not trying to limit . . . opportunities to select a jury[,]" but it had found that imposing the time limit had "sped up the process" in prior cases. When Defendant said he would like two hours, the trial court responded, "[f]or now, I'm going to deny that request. You can certainly renew it while we're in the middle of the voir dire if you feel like there's some question left unanswered that needs to be answered."

4

At trial, the trial court began *voir dire* and questioned the panelists about their ability to follow the court's instructions, including the presumption of innocence; whether anyone knew or had a business relationship with the attorneys, Defendant, or court staff; prior jury service; whether any panel member or their immediate family was in law enforcement; and whether any panel member or their immediate family had been the victim of a crime or convicted of a crime. The trial court's questioning took approximately one hour. The State and Defendant then took their respective one-hour turns at *voir dire*.

*After* the panel was removed from the courtroom, strikes for cause were made, ruled, and acknowledged, and a resulting final composition of the jury to serve in the case was announced by the trial court, *then* Defendant again objected to his one-hour time limit. At that point he made a record of the questions and following topics that he claimed he had wanted to explore but was unable to do so due to the trial court's one-hour limit: question panel members who did not speak; expand on panelists' responses of fairness; ask about connections to law enforcement or legal training; elaborate on the burden of proof; question all panel members who raised their hands regarding self-defense; question panelists regarding reasonable doubt; and question whether potential jurors "could resist bullying to return a compromise verdict[.]"

Defendant claims that his pre-trial objections and his renewed objection after the jury had been selected sufficiently preserved the claim of error such that an abuse of discretion standard applies to the claim. Respondent counters that the claim is reviewable only for plain error because prior decisions of this state have held that challenges to *voir dire* made after strikes for cause come "too late." **Pollard**, 965 S.W.2d at 291. We find it unnecessary

5

to decide whether Defendant's claim was adequately preserved because it fails even under a review for abuse of discretion.

Defendant fails to cite any Missouri case supporting his assertion that a one-hour time limit for a party's *voir dire* is a *per se* abuse of discretion, and our independent research has failed to reveal any such case. In upholding a 1:45 time limit on *voir dire*, the **Pollard** opinion highlighted the fact that the limitation was not unexpected as the trial court had twice warned the parties that the *voir dire* process was not unlimited. ***Id.*** at 287. In **Pollard**, the plaintiff had questioned the panel for one hour when the court broke for a noon recess. ***Id.*** at 284. At that time, the judge told the parties to expedite their questions and that she wanted all *voir dire* completed by 2:30 that afternoon. ***Id.*** When court reconvened after the noon recess, the judge informed the plaintiffs that their *voir dire* must conclude in 30 minutes. ***Id.*** While the **Pollard** decision did "not encourage fixed time limitations on counsel's examination" (nor do we), it noted that if the 30-minute warning had been given before the noon recess, the problem might not have arisen because it would have "allowed counsel more time in which to structure his voir dire examination to insure his questions were asked within the time allotted." ***Id.*** at 287.

Here, Defendant knew four days before trial that he would need to structure his *voir dire* to make sure that he asked his most important questions first. Further, in contrast to **Pollard**, Defendant had the benefit of an hour's worth of answers from the panelists to highly-relevant questions already asked by the trial court. Instead of prioritizing his *voir dire*, Defendant spent his time asking -- in a case involving an assault with a knife -- whether any panel member was a member of a union or the National Rifle Association,

6

whether anyone had a concealed carry permit, and whether anyone had a gun at home for personal protection.

More importantly, the trial court told Defendant that he could renew his objection to the time limitation during his *voir dire* if there were still unanswered questions that he needed answers to. Instead of doing that, Defendant waited until after the jury had been selected before indicating that he had wanted to ask additional questions. As in **Pollard**, Defendant's objection "after challenges for cause had been made and ruled upon, was too late." **Id.** at 291.

Finally, and most importantly, Defendant must show a "real probability" of prejudice. **Baumruk**, 280 S.W.3d at 614 (quoting **Oates**, 12 S.W.3d at 311). His brief fails to even argue, let alone demonstrate, why he was likely prejudiced by the one-hour time limit imposed by the trial court, and we will not "act as an advocate by scouring the record for facts to support Defendant's contentions." **State v. Vitabile**, 553 S.W.3d 429, 431 (Mo. App. S.D. 2018) (quoting **First State Bank of St. Charles v. American Family Mut. Ins. Co.**, 277 S.W.3d 749, 752 (Mo. App. E.D. 2008)). Our conclusion is the same as in **Pollard**: "[t]he time restriction, under the circumstances described, was not an abuse of discretion." 965 S.W.2d at 288.

Point 1 is denied.

*Points 2 and 3 – Exclusion of Evidence*

Defendant's second and third points claim, respectively, that the trial court erred to his prejudice in excluding: (1) evidence of an alleged "plea bargain" Victim had with the State in his own criminal case, and (2) a docket sheet ("Exhibit B") setting forth bond conditions applicable to Victim in that case. Defendant claims such evidence "established

an interest or bias of [Victim] in having a possible motive to testify in favor of [the State and] affected the credibility of his testimony[.]"

We review the exclusion of evidence "for prejudice, not mere error[.] Trial court error is prejudicial if there is a reasonable probability that the court's error affected the outcome of the trial." *State v. Clark*, 364 S.W.3d 540, 544 (Mo. banc 2012) (quoting *State v. Winfrey*, 337 S.W.3d 1, 5 (Mo. banc 2011)) (internal quotations and citations omitted).

"[I]t is well-settled that 'the interest or bias of a witness and his relation to or feeling toward a party are never irrelevant matters.'" *Mitchell v. Kardesch*, 313 S.W.3d 667, 676 (Mo. banc 2010) (internal citations omitted). While bias is always relevant, the scope of the evidence used to show bias is within the broad discretion of the trial court. *State v. Bounds*, 857 S.W.2d 474, 476 (Mo. App. E.D. 1993).

At the time of the assaults charged in the instant case, Victim was facing two felony charges filed against him in 2015: driving while intoxicated ("DWI") and driving while his license was revoked. Exhibit B indicated that Victim "not . . . possess or consume alcohol or be on premises of establishment where the primary item for sale is alcoholic beverages[.]" Prior to Defendant's trial, Victim resolved those charges by pleading guilty to a reduced charge of a class B misdemeanor DWI, and the State dismissed the felony charge of driving with a revoked license. The State did not seek to revoke Victim's bond when it learned that Defendant's assault against Victim had occurred in a bar.

Prior to trial, the State filed a motion *in limine* to exclude the aforementioned evidence. In response to that motion, the trial court directed the State to turn over "any considerations afforded [Victim] in order to secure his testimony." The State asserted that there were no agreements with Victim and the State had no knowledge of any agreement not

8

to seek to revoke Victim's bond in exchange for his anticipated favorable testimony in Defendant's case. During the trial, the trial court allowed Defendant to make an offer of proof by questioning Victim outside the presence of the jury about whether he had received any deals from the State to reduce his charges and/or not seek to revoke his bond.

During the offer of proof, Victim testified that he neither received a plea deal nor had any expectation of leniency in exchange for his testimony against Defendant. Regarding the bond conditions in his DWI case alleging *drug* intoxication, Victim insisted that he was not aware that he was required to refrain from visiting bars and drinking alcohol. After hearing Victim's offer of proof, the trial court found no "indication that [Victim]'s testimony was being swayed because of some partiality towards the State." The trial court allowed Defendant to question Victim about his bond conditions at the time of the assault, but it refused to allow Defendant to challenge Victim's answer with extrinsic evidence via Exhibit B.

Even assuming, *arguendo*, that the trial court erred in excluding the evidence challenged in points 2 and 3, Defendant's inability to demonstrate prejudice is fatal to his claim. Victim, as the complaining witness in the case, "had a natural and inherent bias and prejudice against [Defendant] as [his] assailant[.]" ***State v. Stewart***, 615 S.W.2d 600, 605 (Mo. App. W.D. 1981). The State also covered Victim's extensive criminal history during its direct examination, which Victim admitted "goes back a ways[.]" Victim admitted to approximately 22 convictions for misdemeanors and felonies beginning in 1991 for crimes he committed in Michigan, Arkansas, and Missouri. Victim also testified that he had served time in prison.

9

On cross-examination, Defendant also questioned Victim about his "22 . . . convictions . . . . [s]panning over 20 years . . . . [i]n three different states[,]" and he further demonstrated inconsistencies between Victim's deposition and trial testimony about those convictions. In closing argument, Defendant argued that "[Victim], with his 22 criminal convictions, hasn't met a lie that he cannot tell." Victim's "admission of his prior convictions accomplished the purpose of impeaching his credibility." ***State v. Sanders***, 634 S.W.2d 525, 527 (Mo. App. E.D. 1982).

Given that the jury had already heard much stronger evidence of Victim's bias, self-interest, and lack of credibility, Defendant has failed to demonstrate how the admission of the excluded evidence would have changed the outcome of the trial.[2] Points 2 and 3 are also denied, and the judgment of the trial court is affirmed.

DON E. BURRELL, P.J. – Opinion Author

NANCY STEFFEN RAHMEYER, J. – Concurs in separate opinion

GARY W. LYNCH, J. – Concurs

---

[2] As if all of this were not enough, the evidence of Defendant's guilt was overwhelming. The crimes were committed before multiple eyewitnesses, and they were also captured on a videotape that was played for the jury.



# Missouri Court of Appeals
## Southern District

### Division One

STATE OF MISSOURI, )
)
    Respondent-Respondent, )
)
v. ) No. SD35317
)
SCOTT A. REMSTER, ) **Filed: Feb. 19, 2019**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable David C. Jones

**CONCURRING**

I concur wholeheartedly in the majority opinion; I only write separately to express my concerns about the time limitations of one hour placed on the attorneys' ability to ask questions in hopes of obtaining an impartial jury. When an arbitrary time frame is placed on the voir dire, follow-up questions to the jury panel are discouraged. I do not believe the goal of "speeding up the process" outweighs the importance of the real purpose of voir dire. For the trial court to determine that its questioning in selecting impartial jurors is more efficient almost proves the point. For many people, answering questions propounded by a judge as a person of authority in a black robe is intimidating and discourages complete and honest

answers. There is a huge power differential. I doubt you would get a thoughtful answer to the question, "Is there anyone here who cannot follow the law and presume that the defendant is innocent?" The potential juror cannot get into a discussion with the trial court over what that question means. I do not contend that happened in this case, but I caution trial courts to weigh seriously the need for speed versus the need for real process.

Nancy Steffen Rahmeyer, J. – Concurring Opinion Author